# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### (BROWNSVILLE DIVISION)

United States District Court
Southern District of Texas
FILED

FEB 09 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **URIBE-DeLEON** | § | §2255  B-01-027 |
| (Petitioner) | § | CIVIL ACTION No.[         ] |
| | § | |
| v. | § | CRIMINAL ACTION No. |
| | § | B-96-CR-251-1 |
| **UNITED STATES of AMERICA** | § | |
| (Respondent)C.A.No.99-40136 | § | |

## PETITIONER'S §2255 MOTION

To the Honorable Maj. Judge of this Court;Hon.JOHN W.BLACK:

      **COMES NOW**,the petitioner — **URIBE-DeLEON**,*in propria persona* and with the assistance of the undersigned inmate Legal Advocate,**Roy Dixon**.Hereby moves this Honorable Court to discharge it's power and authority,and expedite all proceedings necessary,to obtain an EVIDENTIARY HEARING in the above said cause;in support of this request the petitioner would respectfully show the Court the following :

## I

## JURISDICTION

      This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C.§2255.Granting prisoners relief who are in custody serving Federal sentences, if unlawfully imposed or need to be corrected

    /
    /

Uribe-DeLeon's §2255
(USDC No.)B-96-CR-251-01

ii

## II

# <u>STATEMENT OF LEGAL ADVOCACY</u>

Petitioner have been assisted in the preparation of this brief/pleadings by an inmate Legal Advocate (the undersigned).Legal Advocacy is provided to indigent and or inmates who are not literate in the law and its intricacies,e.g.,Procedural and Substantive Law.This is done in accordance with the PRECEDENT set forth in *Johnson v.Avery*,393 U.S.483 (1969);and *Wolff v.McDonnel*,418 U.S.539 (1974).

## III

# <u>STATEMENT OF THE CASE</u>

<u>Course of Proceedings.</u>

**On September 10,1996**,a grand jury charged Uribe-DeLeon and others by indictment filed in cause **B-96-CR-251-01.Count 4** alleged that on or about February 4,1994,in the Southern District of Texas,defendant Ernesto Uribe-DeLeon did knowingly and intentionally possess with intent to distribute a quantity exceeding 100 kilograms,that is about 151 kilograms,gross weight,of marijuana,a Schedule I controlled substance;in in violation of 18 U.S.C.§2,and 21 U.S.C.§§841(a)(1),and 841(b)(1)(B).

**On October 16,1998**,Uribe-DeLeon moved to dismiss the indictment for violation of his right to a speedy trial,alleging Uribe-DeLeon was indicted on or about September 10,1996 and for two years the United States Attorney's Office and arresting agencies failed to use due diligence in arresting Uribe-DeLeon,though since the date of the indictment Uribe-DeLeon has resided at:

*l*

**1234 La Posada**

**Brownsville,TX.78521.**

**On November 3,1998,** Uribe-DeLeon filed a supporting
memorandum of anticipated facts with attached exhibits and applicable
law,explaining the relevance of *Doggett v.U.S.*112 S.Ct.2686
(1992),asking the district court to apply the same reasoning in *Doggett*
with his case being dismissed due to the government's violation of
Uribe-DeLeon's speedy trial rights.

**On November 5,1998,**the court orally denied that motion to
dismiss,after considering testimony, and defense exhibits.It is
important to mention the findings of fact by the district court at this
juncture:

**a.**The government did not exhaustively engage in all the
necessary pursuits at their command to discover and find the
whereabouts of Uribe-DeLeon and in fact,the government left a lot to
be desired but there was an effort made;and there would be some
degree of negligence,but not gross negligence or an intentional doing
on the government's part not to find Uribe-DeLeon;and thus,only to
that extent,the court found in favor of Uribe-DeLeon and assessed at
the very most negligence on the government's part during the course of
the period between the indictment and his arrest.

**b.**There would be no finding that the delay in this case was
"uncommonly long because I don't so find," and the court disagreed
with defense counsel's "assertion that in *Doggett*,the Supreme Court
was saying that **two years raises a presumption**."

**c.** Uribe-DeLeon asserted his right to speedy trial after he
was arrested and "did raise the issue as soon as he was brought to

Uribe-DeLeon's §2255                                                **iv**
(USDC No.)B-96-CR-251-01

court," and **timely** objected after his arrest, but the court had "no idea whether that would play — that particular inquiry would play a role in view of the fact what he is contending is that he didn't know that he was indicted,"so that is a strike that will not be in his favor in view of what he is contending.

    **d.**The court has no knowledge Uribe-DeLeon "knew that he had been indicted or the like,for that issue is not before me."

    /

    /

    **e.**The court has **no evidence** Uribe-DeLeon has in any way,manner,fashion or form been prejudiced because of the two-year delay.

    **On November 5,1998,**the court received the parties' written plea agreement and rearraigned Uribe-DeLeon on his conditional guilty plea and found him guilty on count 4,subject only to Uribe-DeLeon's reserving,as orally approved by the court and consented to by the government pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure.[1]

    **On January 13,1999,**the district court ordered $100.special assessment and sentenced Petitioner to 77 months in custody followed by supervised release for 5 years. Petitioner timely filed a NOTICE OF APPEAL.At sentencing Petitioner was represented by defense counsel:

        **JOE VALLE Esq**.
        1120 E.10th.St.
        BROWNSVILLE,TX.78520

---

[1] The Plea Agreement at 4 reads: "The defendant preserves his right to appeal the Judge's ruling on defendant's speedy trial motion."

Uribe-DeLeon's §2255                                                    v
(USDC No.)B-96-CR-251-01

**On November 15,1999,** Petitioner,through his appellate attorney:

**JOSEPH A.CONNORS III**
605 E.Violet Av.Ste.# 3
McALLEN,TX.78504.

filed his opening brief with the Fifth Circuit Court of Appeals.

**On March 23,2000,**before REAVELY,BARKSDALE and STEWART,Circuit Judges for the Fifth Circuit Court of Appeals,the Court in a *per curiam* order AFFIRMED the judgement of the district court in an unpublished opinion.Soon thereafter,counsel Connors filed a PETITION FOR REHEARING.

**On April 21,2000,**the above mentioned judges in one sentence **denied** the PETITION FOR REHEARING and AFFIRMED the judgement of the Appeal.

**On February 7,2001,**the instant §2255 petition follows.

# STATMENT OF THE FACTS

**On December 3,1998,**the district court signed an order denying "motion to dismiss for violation of Speedy Trial Act,"stating the sole issue before the court is whether the **24** month delay between Uribe-DeLeon's indictment and subsequent arrest deprived him of his right to a speedy trial,finding Uribe-DeLeon was arrested on September 17,1998,and analyzing the Sixth Amendment speedy trial claim based on post-indictment delay by considering these four factors:

(1)the length of the delay;

(2)the reason for the delay;

(3)whether the defendant asserted his right to a speedy trial;&

Uribe-DeLeon's §2255                                                   **vi**
(USDC No.)B-96-CR-251-01

(4)whether the defendant has suffered any prejudice as a
result of the delay.

In that order,the district court said that:

a.the court finds the 24 month delay in this case reaches the
level of "presumptively prejudicial;"

b.although the court finds the government did not pursue
Uribe-DeLeon with what is reasonably considered as "due diligence,"
the evidence does not warrant a finding that such conduct by the
government was in any way intentional or grossly neglient;

c. Uribe-DeLeon asserted his right to a speedy trial one
month after his arrest,and there is **no evidence indicating Uribe-
DeLeon knew of his indictment at any time prior to his arrest**;

d.notwithstanding the delay,the court is not convinced Uribe-
DeLeon's ability to prepare an adequate defense was compromised or
impaired;and

e.after weighing the aforementioned factors,the court found
Uribe-DeLeon's motion to dismiss for violation of the Speedy Trial Act
should be denied.

In the interest of brevity,most of the other facts pertinent to
the other issues raised herein are discussed *infra* per issue.Petitioner
proffers that defense counsel Valle provided sub-par
representation,most notably Valle's failure to challenge the aggravated
role enhancement pursuant to §3B1.1(c), and motion the Court for a
downward departure pursuant to §4A1.3.Interestingly,NOT [once] did
Valle attempt to object to the PSR's recommendation of the aggravated
role enhancement neither before sentencing nor at
sentencing.Counsel's performance compromised the defense.

In addition,upon sentencing,Valle moved to console petitioner that he need not worry about the direct appeal,that he knew a real good attorney,one Mr.Joe Connors (Connors) who would do a very good job.Petitioner believed Valle and retained Connors to prosecute his appeal.At this juncture one cannot tell whether Valle's motive for solicitation of employment on behalf of his friend/colleague,Mr.Connors was for pecuniary gain or well intended.

However,on direct appeal counsel raised only one issue i.e., "WHETHER APPELLANT'S RIGHT TO A SPEEDY TRIAL WAS VIOLATED." While there were other solid and meritorious issues that leaped out of the record,for no apparent or reasonable basis,counsel failed to raise them.Among them,notably — failing to challenge the aggravated role enhancement.

Petitioner is cognizant of the fact that appellate counsel may have been laboring under an actual conflict of interest,for the simple fact that he failed to raise the instant issues as ineffective assistance of counsel,or at the least,under the plain error standard,inasmuch as Valle obviously failed to preserve these issues for appellate review.

It is factual that petitioner constitutional right to effective assistance of counsel was implicated by both his counsel[s] sub-par performance below the Sixth Amendment standard.

/
/
/
/
/
/

Uribe-DeLeon's §2255
(USDC No.)B-96-CR-251-01

viii

# STATEMENT OF THE ISSUES

**ISSUE No.1**: WHETHER THE PETITIONER'S FIFTH AMENDMENT DUE PROCESS RIGHT WAS VIOLATED, AND IF SO WHAT REMEDY IS PROPER. **Pg.No.1**

**ISSUE No.2**: WHETHER PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING AND ON APPEAL. **(a)** COUNSEL'S FAILURE TO CHALLENGE THE PSR's RECOMMENDATION OF THE AGGRAVATED ROLE ENHANCEMENT PURSUANT TO §3B1.1(c). **(b)** COUNSEL'S FAILURE TO MOVE THE COURT FOR A DOWNWARD DEPARTURE PURSUANT TO §4A1.3. **Pg.No.13**

# ISSUE No.:1 WHETHER THE PETITIONER'S FIFTH AMENDMENT DUE PROCESS RIGHT WAS VIOLATED,AND IF SO,WHAT REMEDY IS PROPER

In the instant case,petitioner was indicted by the grand jury on **September 10,1996**,however, it was not until **September 17,1998**,when petitioner was arrested.The [interval] between indictment and arrest was a [substantial] **24 months DELAY.**

The district court made a finding that the 24 months delay reaches the level of "presumptively prejudicial"(1R23)[1],while also finding the delay in this case was not "uncommonly long."(2R78).

Petitioner submits his Fifth Amendment right to PROCESS that's DUE was violated by the post-indictment delay of 24 months between his indictment on September 10, 1996 and his subsequent arrest on September 17, 1998.

In essence,**due process** requires as a general matter an opportunity to be heard at a meaningful time in a meaningful manner;PERSONS MUST BE AFFORDED DUE PROCESS BEFORE DEPRIVATION OF LIFE,LIBERTY,OR PROPERTY.*Kelm v.Hyatt*,44 F.3d.415 (6th.Cir.1995).*See also.,Matthews v.Eldridge*,424 U.S.319,333 (1976);and *Armstrong v.Monzo*,380 U.S.545,552 (1965).

Accordingly,the Supreme Court has held that the DUE PROCESS Clause of the Fifth Amendment **forbids** the federal government from denying equal protection of the laws.*See*

---

[1] 'R' refers to the record on appeal preceeded by the volume number and followed by the page number. Petitioner [used] the record on appeal to aid in preparing the factual basis for this claim.

CMPDF - www.texno.com

*e.g.,Weinberger v.Wiesenfeld,*420 U.S.636,639 n.2 (1975)*Hampton v.Mow Sun Wong,*426 U.S.88 93 (1976).

Such a claim inexorably leads to a consideration of the **Sixth Amendment,** which provides petitioner with a right to a "speedy trial." *United States v. Garcia,* 995 F.2d 556, 559 n.6 (5th Cir. 1993), and the Supreme Court's decisions in *Klopfer v. North Carolina,* 386 U.S.213 (1967); *Smith v. Hooey,* 393 U.S. 374,(1969); *Dickey v. Florida,* 398 U.S. 30, (1970); *Barker v. Wingo,* 407 U.S. 514, (1972); *Moore v. Arizona,* 414 U.S. 25, (1973);and, *Strunk v. United States,* 412 U.S. 434, (1973);

Petitioner submits the more specific controlling intermediate precedents are: *United States v. Dyson,* 469 F.2d 735, 742 (5th Cir. 1972)[in prosecuting for draft evasion, 22 months delay following receipt of indictment was "excessive"requiring the government to make showing to be followed by trial court's specific findings of fact and conclusions of law concerning reason for delay]; *United States v. Brown,* 169 F.3d 344 (6th Cir. 1999)[court affirmed dismissal of an indictment since defendant's speedy trial rights were violated]; and *U.S. v. Akinsola,* 57 F.Supp.2d 455, 458 (E.D. Mich. 1999)[burden is on the government to rebut a presumption of prejudice when the government has been found to be negligent in its pursuit of a defendant, thereby causing the delay of 52 months between indictment and defendant's arrest; and when, as in this case, the government is silent on this issue, the district court granted the motion to dismiss with prejudice on Sixth Amendment speedy trial grounds after finding the government did not sufficiently rebut the presumption that its delay prejudiced defendant's case, given the case's

2

extraordinary **delay was attributed to the government's negligence in pursuing defendant**].

## BARKER'S FOUR FACTORS

Determining whether a defendant's Sixth Amendment speedy trial has been violated requires a careful *ad hoc* balancing of the four Barker factors. *Robinson v. Whitley*, 2 F.3d 562, 568 (5th Cir. 1993), *cert. denied*, 510 U.S. 1167, (1994).

In resolving a defendant's claim of violation of the Sixth Amendment guarantee of a speedy-trial **based on post-indictment delay**,the Fifth Circuit examines four factors: (1) *the length of the delay*, (2) *the reason for the delay*, (3) *when the defendant asserted his speedy trial rights*, and (4) *any prejudice to the defendant resulting from the delay*. *United States v. Garcia*, 995 F.2d 556, 560 (5th Cir. 1993); *accord, United States v. Tannehill*, 49 F.3d 1049, 1054 (5th Cir. 1995)(*citing Barker v. Wingo*, 407 U.S. 514, 530-533 (1972)), *cert. denied.*, 516 U.S. 859 (1995). Put differently, the Supreme Court has stated that it is necessary for courts to balance "whether [the] delay before the trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." *Doggett v. United States*, 505 U.S. 647, 651 (1992)(*citing Barker v. Wingo*, 407 U.S. at 530,). None of the enumerated factors alone is sufficient of establish a violation of the Sixth Amendment, "[r]ather, they are related factors and must be considered together with such other circumstances as may be relevant."*Id Barker*.

3

In accessing prejudice, a court should look to the following three policies behind the Sixth Amendment's guaruantee of a speedy trial: (i) preventing oppressive pretrial incarceration; (ii) minimizing a defendant's anxiety and concern ; and (iii) assuring that a delay does not impair the defense.*Id, Garcia,* at 556;*See also,Dyson,* 469 F.2d at 742. (22 month delay following receipt of indictment was "excessive" in prosecution for draft invasion).

## LENGTH OF DELAY

The district court properly said: "consistent with Fifth Circuit precedent, this court finds that the twenty-four month delay reaches the level of "presumptively prejudicial."

Petitioner submits the government designated Petitioner an accused when the original warrant was issued for his arrest. *United States v. Avalos,* 541 F.2d 1100, 1108 & n.12 (5th Cir. 1976), *cert. denied,* 430 U.S. 970 (1977). Having marked the inception of the speedy trial preiod, the Fifth Circuit must next locate its teminus. *Id.,* at 1109. Petitioner concludes that the 24 months delay following the government's receipt of his indictment was "excessive" within the litmus test enunciated  in *Dyson*.

This factor serves as a "triggering mechanism." *Barker,* 407 U.S. at 530. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." In the matter *sub judice* one can reasonably conclude that said 24 months delay was **presumptively prejudicial.**Any lenght of delay exceeding one year in the Fifth Circuit,crosses the requisite threshold level regarded  as presumptively prejudicial, triggering speedy trial analysis.

4

# REASON FOR THE DELAY

## (The burden is on the government)

The district court said it found the Government did not pursue Petitioner, "with what is reasonably considered as 'due diligence,'" but the Government's conduct was not intentional or grossly negligent. This finding is at odds within the plain meaning of "excessive delay," for the mere fact that "the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner ... **the burden is on the prosecution.**"*U.S. v. Graham*, 128 F3d. 372, 374 (6th. Cir. 1997)(citation and internal quotation marks omitted)(emphasis added).

Petitioner submits that **the government was responsible for and should be charged with all the delay period resulting from their failure to arrest him during the 24 months,** where he lived and worked openly as he had done so for the past 17 years at the same address, while maintaining the same telephone number. **Not once** did petitioner have to, or, try to hide and evade law-enforcement personnel; he occassionally visited his Grandmother in Mexico to help her with her farm, crossing back and forth the Brownsville International bridge at the border. Accordingly, such conduct cannot be said to have contributed to the delay, for **he was unaware of any federal indictment pending against him.** However, the Department of Justice (DOJ) was grossly negligent by failing to follow-up its own protocol, that being, to enter into the FBI's NCIC data base the WARRANT for petitioner's arrest — at least 30 days after the grand jury handed down their indictment on

September 10,1996. Given these facts, the speedy trial clock was never tolled by any actions of the Petitioner. Thus the district court should have weighed these factors in Petitioner's favor, and against the government, who should properly bear responsibility for their entire share of the delay.

As for the second *Barker* factor, the government bears the burden to explain the cause for the delay because the prosecutor and the court have an affirmative constitutional obligation to try a criminal defendant in a timely manner. *United States v. Graham*, 128 F.3d 372, 374 (6th Cir. 1997). Had the Petitioner evaded prosecution, he certanly would be culpable in causing the delay and any inherent prejudice if any, would not weigh in his favor. However, the Department of Justice,(DOJ) has failed to prove that Petitioner was actually culpable in causing the delay in his case. Further, the DOJ did not present credible evidence that Petitioner was aware of the issuance of the indictment and intentionally hid himself from law enforcement agents.

Hence, there is ample evidence in the record to show that Petitioner's constitutional right to a speedy trial was violated, that would in turn support a findking that the DOJ did not exercise reasonable diligence in attempting to locate the Petitioner. The DOJ's indirect attempts to apprehend the Petitioner caused the case to languish on [fugitive] status for almost two (2) years. Accordingly, the Department of Juustice is entirely responsible for the delay in bringing Petitioner to trial; and that such extraordinary delay[2] in this case weighs in favor of dismssal of the indictment or in the alternative,because this is a collateral attack, a reduction in Petitioner's sentence. The fact that there is no identifiable reason as to why the

---

[2] It is important to recognize that "the administration of justice and the administration of the Act are not well served by the governement's delay, particulary here where the delay was substantial." *United States v. Martinez*, 75 F.Supp.2d 360, 367 (D. N.J. 1999).

6

government failed to bring this case to trial within seventy (70) days while the arrest did not take place until almost two (2) years to the date of the indictment cries out for the alternative remedy outlined by the court in *Strunk v.   United States,* 467 F2d.969 (1972)( *the appropriate remedy is not dismissal of the indictment, but rather that the district court enter an order directing the Attorney General to credit Petitioner with the period of time elapsing between the return of the indictment and the date of the arraignment).* "The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial."*Id, Taylor,* 487 U.S. at 340.

The essentials of procedural due process comprise notice of the charges and reasonable chance to meet them. *See, Matthews v. Eldridge,* 424 U.S. 319, 348 (1976).   The basic comport of the constitutional requirement is that before a significant deprivation of liberty takes place, the affected individual must be forewarned and afforded an opportunity to be heard "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965).

Here, the Petitioner avers that said delay was prejudicial to his defense. He really had no other viable choice but to plead guilty in hopes of a lighter sentence primarily because, by the time of his arraignment Petitioner's funds had depleted and could not hire a competent attorney of his choice.   His defense was compromised. He had to settle for less "Mr. Joe Valle," who is now the subject of an ineffective assistance of counsel claim. *See infra.*

It is noteworthy, that said delay was unreasonable in light of prevailing professsional norms expected from the Department of Justice, who may have benefited in order to gain tactical advantage over the defendant such as to violate his Due Process Rights.  There can be little doubt that the Petitioner was deprived of his right to a speedy trial.  An "attempt to delay the trial in order to hamper the defense should be weighed heavily against the government." *Id Barker, supra.*  There was no

7

"valid reason" for the delay "such as a missing witness" nor a "neutral reason such as an overcrowded court." *Id* at 531.

## THE PETITIONER'S ASSERTION OF HIS RIGHT

The Barker Court, held "that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id*. However, the appropriate qestion shoud be how can one demand his right to a speedy trial when he has not been put on notice that he has been indicted. It is well established that [only] the Department of Justice is privy to such information and the Petitioner can only know when he is arrested or that a warrant is out for his arrest, thus in this case, Petitioner would have to a psychic and engage in some sort of clairvoyance to discern that he had been indicted on or about September 10, 1996,in order to invoke his right to be tried within seventy (70) days from that date. Furthermore, there is no evidence indicating that Petitioner was aware that he had been indicted and as a consequence deliberately failed to assert such right.From a logical and commonsense standpoint the Petitioner had no choice but to remain in a state of silence during the twenty four (24) months delay,for the mere fact that **he did not know he was under indictment**. It must be reiterated that under the *Barker* test, a defendant does not waive the right by failing to assert it. *Id* at 531-32.

Accordingly, for this court to hold Petitioner ACCOUNTABLE for something he had no way of knowing would rule an [absurdity], compare, *United States.v. Palmer*, 537 F.2d 1287, 1288 (5th Cir. 1976)*(considering a defendant's silence during a 22 months delay as a factor weighing against him)*. See also, *Brown*, 169 F.3d at 350 (*"the government has not presented sufficient proof that Brown knew that he had been indicted.....we find that Brown should not be penalized for waiting until his arrest before invoking his right to a speedy trial"*), and *Doggett*, 505 U.S. at 653-54. (*also finding that the defendant "is not be taxed for invoking his speedy trial right only after his arrest" when defendant was totally*

8

*unaware that he was under indictment.).* In this case one can readily conclude that the district court not only taxed, but penalized petitioner indirectly for waiting until his arrest before invoking his right to a speedy trial.

## PREJUDICE TO THE PETITIONER

To establish prejudice to his defense, Petitioner submits that the 24 months delay compromised his defense, for the simple fact that at the time he got arrested the money that he could have paid an attorney of his choice to defend him against the charges contained in the government's indictment was completely depleted and had to settle for less, an incompetent attorney — Joe Valle, who chose not to do any investigation, reasearch the relevant Guideline provisions and failure to effectively represent petitioner at sentencing. Providing legal services that tantamounted to a charade.

The requirement of speedy justice has been part of the Anglo-American common law tradition since the Magna Carta. Therefore, the right to speedy justice should be HONORED. If that right is not honored in a case of this kind, the basic values which the Framers intended to protect by the Sixth Amendment's guarantee of a speedy trial, and which motivated Congress to enact the Speedy Trial Act of 1974, will become nothing more than managerial considerations for the prosecutor to manipulate.

Of course, "it requires no extended argument to establish that prosecutors do not deviate from fundamental conceptions of justice when they defer seeking indictments." *U.S. v. Lavasco,* 431 U.S. 783, 794 (1977), however, when the indictment has been handed down, the petitioner's right to be tried **within 70 days from that date is triggered**, 18 USC §3161. Even absent a statute, the Speedy Trial Clause of the Sixth Amendment imposes restraints on the length of post-accusation delay. *Id, Lovasco,* 431 US at 791 n.10. Thus, "a showing of prejudice is not required

9

to establish a violation of the Sixth Amendment Speedy Trial claim. *See, Id.; Reed v. Farley,* 512 U.S 339 (1994).

"Actual prejudice is determined by examining whether the defendant has suffered — (1) oppressive pre-trial incarceration; (2) anxiety and concern; and (3) to limit the possibility that the defense will be impaired." *Id,Brown,* 169 F.3d at 350.

"of these, the most serious is the last because the inability of a defendant to prepare his case [skews the fairness of the entire system. There is .....prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however is not always reflected in the record, because what has been forgotten can rarely be shown" *Id,Barker, supra* at 532.

Here the district court made this finding:

"Implicit in this analysis is the core issue of whether the defendant suffered any prejudice as a result of the delay....**Notwithstanding the delay, this Court is not convinced that the defendant's ability to prepare an adequate defense was compromised, or impaired**." (1R24) (emphasis added).

Juxtaposing the court's finding with the Supreme Court's *Barker,* standard — "[to limit the possibility] that the dfense will be impaired." *Id*. It is quite clear that **THE TRUE TEST** is not whether the court is "convinced that the defendant's ability to prepare an adequate defense was.....impaired," but rather THE FOCUS is on **limiting the possibility**, "that the defense will be impaired." In the matter **sub judice** no such finding was made. Petitioner states that his memory of the past events which gave rise to the instant indictment was faded — He could not recall properly certain dates, names and places. This information was made available to defense counsel Valle. It is Petitioner's belief that counsel withheld such information from the court.Such faded memory due to the passage of time coupled with counsel's unprofessional conduct, not only created the strong

10

# WHETHER THE PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING AND ON APPEAL

A criminal defendant has a constitutional right to receive effective assistance of counsel, *id.* U.S. Constitution Sixth Amendment. "A claim of ineffective assistance based on the failure to argue an issue ... is governed by the familiar two-part *Strickland* test, which requires (the court) to determine whether: (1) the attorney's performance was deficient, and (2) the deficiency prejudiced the defendant." *U.S. v. Philips*, 210 F3d. 345, 348 (5th. Cir. 2000)(quoting *Roe v. Flores-Ortega*, 145 L. Ed. 2d. 985 (2000) citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

The Sixth Amendment guarantees the defendant the right to counsel at every stage of the "the proceedings against him," *Coleman v. Alabama*, 399 U.S. 1, 7 (1970) (citations omitted), "including, e.g., the indictment, arraignment, preliminary hearing and SENTENCING." *U.S. v. Febus*, 218 F3d. 789, 793-94 (7th. Cir. 2000) (emphasis added).

"The entitlement to effective assistance does NOT end when the SENTENCE is imposed, but extends to one's **first appeal** as of right." *Id, Williamson*, 183 F3d. at 462, (*quoting Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *and Green v. Johnson*, 160 F3d. 1029, 1043 (5th. Cir. 1998) (emphasis supplied).

"Counsel is not  deficient for not raising every non-frivolous issue ... instead, to be deficient, the decision not to raise an issue must fall below an objective standard of reasonableness. This reasonableness standard requires

13

counsel TO RESEARCH RELEVANT FACTS AND LAW,OR MAKE AN
INFORMED DECISION THAT CERTAIN AVENUES WILL NOT PROVE
FRUITFUL.SOLID,MERITORIOUS ARGUMENTS BASED ON DIRECTLY
CONTROLLING PRECEDENT SHOULD BE DISCOVERED AND
BROUGHT TO THE COURT'S ATTENTION." *Id,Philips* at 348 (citations
omitted)(emphasis added).

Thus,for this Court to determine whether both sentencing and
appellate counsels were deficient -- the Court must consider whether a
challenge to both **the aggravated role in the offense**,and **the over-
representation of the seriousness of Petitioner's criminal history
category**,would have been sufficiently meritorious in that sentencing
counsel "Joe Valle" (Valle) should have invoked said provisions;and
appellate counsel "Joe Connors iii" (Connors) could be faulted for not
raising said Guideline provisions.Petitioner did not raise these issues at his
sentencing hearing or in his direct appeal.Such failure ordinarily constitutes
a procedural default barring collateral review by §2255 motion,unless
"cause and prejudice" are shown.*See U.S.v.Frady*,456 U.S.152 (1982).As to
the first of these requirements,petitioner has shown ample cause for not
raising this claim earlier,namely that he received constitutionally ineffective
assistance of counsel.Where a defendant receives ineffective assistance,it is
well settled that the claim is properly raised by §2255 motion rather than on
direct appeal.*See Thor v.U.S.*,574 F2d.215 (5th.Cir.1978).

"While courts are properly deferential to attorney's discretion,**failure
to raise an objection to a clear and disputable error in the PSR** is not
within the broad range of performance that can be deemed reasonable."
*Id,Smith v.U.S.*,871 F.Supp.251,255 (E.D.Va.1994) (emphasis supplied).*See
U.S.v.Beatty*,35 F.3d.557,1994 WL 481912 (4th.Cir.1994) (unpublished

14

CAMPDF - www.fbmn.com

opinion) (finding *Strickland* violation where attorney failed to file written objections to presentence reports);*U.S.v.Ford,supra,*918 F.2d.1343,1350 (8th.Cir.1990) (counsel's failure to object to incorrect offense level that may have been 2 steps higher "was so serious that it deprived Ford of a fair sentence" sufficed to establish prejudice);*and U.S.v.Hanger,*991 F.2d.791,1993 WL 128015 (4th.Cir.1993) (unpublished opinion) (finding *Strickland* violation where attorney failed,as defendant requested,to object to errors in presentence report).Here,in the instant case,at sentencing counsel did not move the court for a downward departure pursuant to §4A1.3,nor did he make the appropriate objection to the PSR's aggravated role enhancement pursuant to §3B1.1(c).The following exchange transpired at sentencing:

"THE COURT:Have you had an opportunity of going over the presentence report prepared by the probation department with your attorney?

THE DEFENDANT: Yes,sir.

THE COURT: Gone over it,and he's explained it to you?

THE DEFENDANT: Yes,sir.

THE COURT: And are you aware of any factual errors or omissions in the pre-sentence report?

THE DEFENDANT:No,sir.

THE COURT: All right.The record will reflect that there are **no objections**[1] filed by the United States nor by the Defense counsel and **no complaint concerning the application of the guidelines;is that correct,sir?**

MR.VALLE: **That's correct,**Your Honor."

(Sentencing transcripts,dated **Jan.13th,1999**) (emphasis supplied).

---

[1] Counsel's subpar performance by making **no objections** to the PSR [precluded] the Court from making §6A1.3 finding of 'reliability.' *See also,*Rule 32 (c)(3)(D),Fed.R.Crim.P.(court must make finding as to PSR's accuracy if factual inaccuracy is alleged by defendant,counsel,or other source).

"To prevail,(petitioner) must establish,first,that his attorney[s] representation was **deficient** and,second,that the deficient performance caused him **prejudice**." *Id.Williamson,*at 462 (emphasis supplied).Put another way, "**ineffective counsel is counsel whose: (1) subpar performance,(2) prejudiced the defendant**." *Cabello v.U.S.,*884 F.Supp.298,301 (N.D.Ind.1995)(citations omitted)(emphasis added).

Given these conclusions,two seperate but related questions remain.The first,whether petitioner would have received a lower sentence had his counsel raised the appropriate objection to the PSR's aggravated role enhancement pursuant to §3B1.1(c).The second question — whether counsel was ineffective by failing to move the court for a downward departure (horizontal move) from Criminal History Category III to Criminal History Category II,where it is most likely that the court would have so moved,had counsel made his proffer of mitigation on behalf of his client.

## AGGRAVATED ROLE

Although the Guidelines do not specifically define "organizer, leader, manager, or supervisor," the above "commentary to the Guidelines provide some basis for discerning when an upward adjustment for an aggravated role under section 3B 1.1 (c) is appropriate." *U.S. v. Fuller*, 897 F. 2d. 1217, 1220 (1st. Cir. 1990). The application notes to §3B1.1 makes clear that in determining whether the defendant had a leadership, supervisory, organizer and/or managerial role,that the sentencing court should consider (use) the following factors:

> **(1)** the exercise of decision making authority,
>
> **(2)** the nature of participation in the commission of the offense,

16

(3) the recruitment of accomplices,

(4) the claimed right to a larger share of the fruits of the crime,

(5) the degree of participation.

U.S.S.G.§3B1.1 Comment.n.4('The Factors')

In November 1993, Application Note 2 of the commentary to §3B1.1 was amended to clarify the intended reach of §3B1.1.It now provides:

> To qualify for an adjustment under this section,the defendant
> must have been the organizer,leader,manager,or supervisor of
> one or more other participants.An upward departure may be
> warranted,however,in the case of a defendant who did not
> organize,lead,manage,or supervise another participant,but who
> nevertheless exercised management responsibility over the
> property,assets,or activities of a criminal organization.
> §3B1.1,comment.n.2.

"[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a Federal statute or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. U.S.*, 508 U.S. 36, 38 (1993). *See also*, U.S.S.G § 1B 1.7 ("the Commentary that accompanies the Guideline sections may serve a number of purposes.

First, it may interpret the guideline or explain how it is to be applied. Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal on appeal....").

17

"Thus, section 3B1.1 does not apply to a defendant who merely organizes or supervises criminal activity that is executed without the aid of others. Instead the defendant must have exercised some degree of control over others involved in the commission of the offense or he must have been responsible for **organizing** others for the purpose of carrying out the crime. This requirement in implicit in the terms "ORGANIZER, LEADER, MANAGER and SUPERVISOR," each of which suggests the presence of underlyings or subordinates. "*id. Fuller,* 897 F.2d at 1220 (emphasis supplied).

It can be proven that "justice depends upon the crucial assumption that **records and transcripts are accurate reflections of the facts** pertinent to the issues on review." *Bucklelew v. U.S,*575 F.2d,515,520 (5th.Cir.1978) (emphasis added).

There should be no dispute that Petitioner was not the Owner of the marijuana. He was just a foot-soldier.The record clearly indicates that:

"**Ernesto Uribe-De-Leon** was only the middle-man in this deal....the total weight of the marijuana was 151 (kilos).

On the morning of February 5,1994, **Ernesto Uribe-De-Leon** met with the CI and gave him $4,000.00 cash as up front money for transporting the marijuana load....**Although the evidence reflect that he was not the owner of the marijuana, [it appears] he was the middle-man, does having a higher role than the other Co-defendants."** *Id.* PSR at p. 7,¶'s 26, 27,& 28 (Quoted in part) (emphasis added).

Gleaning from the above it is clear that the Probation Officer (PO) herself was unsure of the **material fact** of what role the Petitioner played,and if in fact he was the 'middle-man,' "**it appears** he was the middle-man." *Id.*The emphasized language of "it appears" demonstrates

the issue, *See e.g., U.S. v. Williamson*, 183 F.3d.458, 462-63 (5th.Cir.1999) (finding deficient performance when counsel did not cite "directly controlling precedent" which showed that a sentencing enhancement was improper); *U.S. v. Philips* 210 F.3d.345,351-52 (5th.Cir.2000) (finding ineffective assistance of counsel, where counsel failed to raise  an obstruction of justice enhancement pursuant to U.S.S.G §3C1.1 on appeal, whereby said enhancement increased Philip's offense-level resulting in a longer prison sentence, clearly demonstrating the requisite **prejudice**[4] factor.) *C/f., U.S. v.Glover*, 97 F.3d.1345,1350 (10th.Cir.1996) (finding prejudice where the defendant "allege[d] with out challenge on record that his sentencing range was improperly enhanced from 63-78 months to 110-134 months).

In this case,finding nothing more in the record,one can reasonably conclude that " **the preponderance of evidence does not support the court's determination**" of the aggravated role attributable to the petitioner for sentencing purposes.*Id.,Agis-Meza*,99 F.3d.at 1055 (emphasis added).

*I*

## Counsel's failure to argue for a downward departure pursuant to U.S.S.G § 4A 1.3

---

[4] Please note that the Fifth Circuit's "Prejudice Rule" delineated in *Spriggs v.Collins*, 993 F.2d.85,88 (5th.Cir.1993) (the fact that attorney error resulted in a longer sentence, however, does not always show prejudice) have been qualified by the court in *Philips* — that being, *a Guideline enhancement in the offense-level is an exception to the prejudice rule. id Philips*, 210 F.3d.at 351.

There is the strong likelihood that Petitioner's Criminal History Category (C.H.C.) 'significantly overrepresents' the seriousness of Petitioner's criminal history or the likelihood that the Petitioner will commit further crimes and had Counsel so alerted the court — that the court would have granted or at least considered a downward departure from the higher category C.H.C. III to the lower category C.H.C. II because the seriousness of Petitioner's criminal history closely resembles that of most other defendants with Criminal History Category II.

In the instant case, the first two points assessed Petitioner were for misdemeanors more akin to an **infraction of the law**, *both* occurring almost 10 years prior to the instant offense — the first offense occurred on **2/24/1990** Petitioner was only 25 years old, and received 6 months probation for driving while intoxicated (first offense), *id.* PSR at ¶ 49; and — a simple assault committed on **01/16/1991** — it was a husband and wife disagreement.He came home under the influence of alcohol,ended up slapping his wife after she 'cussed' him out at their home for his drunken state and stupor,it was just one slap,nothing more,however his wife still called the local police and got them to file charges against her husband.Tellingly, Petitioner have always loved his wife and as of this day the marriage remains intact.Petitioner received 6 months probation for this MINOR INFRACTION, which he has successfully completed.It is important to note that both of these two offenses are unrelated to the instant offense.

IN REMANDING for §4A1.3 consideration,the Third Circuit held:

"We hold that ... the plain language of §4A1.3 provides,a district court considering a departure may weigh reliable information [that] indicates that the criminal history category does not

adequately reflect the seriousness of the defendant's past
criminal conduct or the likelihood that the defendant will
commit other crimes ... in so holding, we emphasize that a
downward departure under §4A1.3 **is only justified in cases
where a defendant's criminal history category 'significantly
over-represents' the seriousness of the defendant's past
conduct and future threat to society,"** *U.S. v. Shoupe,* 988
F.2d.440, 447 (3d. Cir. 1993) (emphasis supplied) (quoted in part). Petitioner
faults Valle for not proffering the following [mitigating factors] for
purposes of a §4A1.3 horizontal downward departure at sentencing:

(i) Petitioner should not be considered a villainous criminal;

(ii) 75% of his priors illustrates impulsive, alcohol related
behavior; and,

(iii) 50% of his priors were petty offenses more akin to infractions
of the law, the combined sentence on these two minor offenses results
in no more than 12 months probation.

Not once did Valle seek to file objections to the PSR's over-representation
of petitioner's criminal history category or sought to move the court for
said departure, such failings cannot be said to have satisfied any Sixth
Amendment [DUTY] counsel had to object. *See e.g., Abreu v. U.S.,* 925
F. Supp. 1404, 1412 (N.D. Ind. 1996) ("moreover, merely by lodging some
objection, even if not, the strongest one possible, counsel likely fulfilled any
Sixth Amendment duty he had to object."). Here, counsel simply abrogated
his role as an advocate by not lodging [any objections] whatsoever, *see* PSR
at pg. 20:

"On December 29, 1998, contact was made with the defendant's attorney, Joe Valle, who indicated NO OBJECTIONS to the PSR would be filed."

*See Gray v. Lynn*, 6 F.3d. 265, 269 (5th. Cir. 1993) (holding that "the failure of [defendant's] counsel to OBJECT to the erroneous instructions cannot be considered to be within the wide range of professionally competent assistance.") (emphasis added) (quoting *Ricalday v. Procunier*, 736 F.2d. 203, 207 (5th. Cir. 1984); and *U.S. v. Span*, 75 F.3d. 1383, 1387 (9th. Cir. 1996) (Reversing defendants convictions, based on ineffective assistance of counsel, where defense counsel without any rational basis failed to OBJECT to apparent errors). Undoubtedly, in this case counsel [diluted] the adversarial process. *See, e.g., U.S. v. Cash*, 983 F.2d. 558, 560 (4th. Cir. 1992) ("the Sentencing Commission has expressly identified some circumstances that it did not adequately consider when promulgating the Guidelines. **One such circumstance is the inadequacy of a defendant's Criminal History Category**.") (citation omitted) (emphasis added), *Cert. denied.*, 508 U.S. 924 (1993). Had Counsel Valle **only read** the provisions of §4A1.3 policy statements he would have seen that his client's position fell directly on line with said provisions. In this regard counsel's failure to read and investigate the relevant guideline issues proved sub-par and unprofessional, implicating appellant's Sixth Amendment right to [effective] representation at a [critical] stage of the proceeding. In the instant case Petitioner faults trial Counsel Joe Valle for not moving the Court at sentencing for such departure –– when "given the appreciate factual determinations" §4A 1.3 authorizes a sentencing court to downward depart. *id. Webb*, 139 F.3d at 1396 . Please, see the following cases where the Courts held that §4A1.3 authorizes a downward departure when the

Criminal History Category, assigned, significantly overrepresents the
seriousness of the defendant's past Criminal Conduct. *See, e.g., U.S.
v. Spencer,* 25 F.3d.1105,1112-13 (D.C.Cir.1994); *U.S. v. Clark,* 8
F.3d.839,843 (D.C.Cir. 1993); *U.S. v. Lindia,* 82 F.3d.1154,1165
(1st.Cir.1996); *U.S. v. Rivers,* 50 F.3d.1126,1131
(2nd Cir.1995); *U.S. v. Shoupe,* 35 F.3d.835,838-39 (3rd.Cir.1994) ("The
Sentencing Commission recognized the **imprecision** inherent in criminal
history classifications....the criminal history score is unlikely to take into
account all the variations in the seriousness of criminal history that may
occur ... it promulgated §4A1.3 to give sentencing judges **discretion to
depart** from the prescribed range where it **misrepresents a defendant's
criminal history or likelihood of recidivism**") (emphasis supplied); *U.S. v.
Bowser,* 941 F.2d 1019,1023 (10th.Cir.1991); *U.S. v. Adkins,* 937
F.2d 947,952 (4th. Cir. 1991); *U.S. v. Lawrence,* 916 F.2d.553,554-55
(9th.Cir.1990); *U.S. v. Brown,* 985 F.2d.478,482 (9th.Cir.1993); *and
U.S. v. Beckham,* 968 F.2d.47 (D.C.Cir.1992) (§4A1.3 authorizes downward
departure when Criminal History Category assigned,significantly over-
represents seriousness of defendant's past criminal conduct). *See
e.g., Cabello v. U.S.,* 884 F.Supp.298,302-03 (N.D.Ind.1995)(prejudice
shown where sentence would have been at least eight years,eleven months
shorter but for counsel's failure to challenge error in assessment of
petitioner's **criminal history category**); *Smith v. U.S.,* 871 F.Supp.251,256
(E.D.Va.1994)(prejudice shown even where petitioner's sentence of 292
months was well within Guidelines range of 262 to 327 months that would
have applied had attorney caught error in determination of **criminal
history category**); *and Martin v. U.S.,* 109 F.3d.1177,1178
(7th.Cir.1996)(while the Court admitted to error in its selection of Martin's

29

criminal history category,to his obvious detriment,it declined to reach the merits of the issue because the additional 16 months that Martin must serve in prison,although concededly significant to him,was not "significant" prejudice in the eyes of the court).It is important to note that the "significant" prejudice test used in *Martin* is **no longer good law**, The Supreme Court in *Glover v. U.S .,supra*,___U.S.___(2001),rejected that standard.

"A substantial body of Fifth Circuit case law insists,however,that effective counsel conduct a  reasonable amount of pretrial investigation...this circuit has recognized that,at a minimum,counsel has a duty to interview...and make an independent investigation of the facts and circumstances of the case.This study is reflected in the American Bar Association Standards for Criminal Justice.[5] " *Nealy v.Cabana*,764 F2d.1173,1177-78 (5th.Cir.1985) (citations omitted) (emphasis added).Here Valle simply failed to investigate and **read** the relevant case law and Guidelines pertinent to his client's cause.Valle's "failure to investigate thus resulted in a factual vacuum and cannot withstand Sixth Amendment scrutiny." *id.,Cabana*,764 F2d.at 1178.Sub-par performance is performance below the Sixth Amendment standard,*id.*

To a large extent,§4A1.3 departures,which are predicated on aspects of the offender's **criminal past** respond to factors [outside of],and usually [prior to],the offense at issue, thus,**relevant conduct** of the instant offense is not applicable, *id.*§4A1.3.

The above mentioned 2 petty offenses may not be popular these days, but compared to other more violent crimes such as carjacking,assualt,and robbery with violence, would also produce a similar criminal history

---

[5] THE DEFENSE FUNCTION, ABA STD, 4-4, 11 1988

category — they are certainly not the most serious and certainly not the most egregious.

The policy statement to §4A1.3 provides that "[i]f reliable information indicates that the Criminal History Category does not adequately reflect the seriousness of the defendant's past Criminal Conduct or the likelihood that the defendant will commit other crimes (recidivism),the Court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. §4A1.3 **p.s.**

As to Petitioner's claim that had Counsel at sentencing moved the Court for a horizontal departure to a lower Criminal History Category,that being,a move from Category **III** to Category **II**.there is a strong possibility that the Court would have granted the horizontal movement for the application that Criminal History Category **III** is [not] reflective of his past conduct,it overrepresents the seriousness of his priors — a resultant lesser sentence would have ensued, furthermore, "directing the district court's attention to the precise relief sought under the specific Guidelines would have avoid[ed],future ambiguity," *id. In Re:Sealed Case* No. 98-3116,199 F.3d.488,495 (D.C.Cir.1999). In reality, "the only possible exercise of leniency left to the Court would have been a downward departure under §4A.1.3," *id.* at 495.n.5. (Rogers,Circuit Judge, dissenting).

## PREJUDICE

This Court should find that Vaile's **failure to conduct this brief examination and invocation of the Law** constituted performance below an **[objective standard  of reasonableness]**.

There is persuasive authority supporting the Petitioner's position also. "Sentencing is a critical stage....at which a defendant is entitled to effective assistance of counsel, and a sentence imposed without effective assistance

must be vacated and reimposed to permit facts in mitigation of punishment to be fully and freely developed," *U.S. v.Breckenridge*,93 F3d.132,135 (4th.Cir.1996) (citations omitted) (emphasis added).

To show **prejudice**,Petitioner "must show that there is a 'reasonable probability that,the result of the proceeding would have been different.'A reasonable probability is that which renders the proceeding unfair or unreliable,i.e.,undermines confidence in the outcome." *Id,Philips,* 210 F3d.at 350 (*quoting Strickland and Williamson*).*A reasonable probability is that which renders the proceeding unfair or unreliable,i.e.,undermines confidence in its outcome.See id.;Williamson*,183 F3d.at 463.

## LAW OF THE CIRCUIT

In *Spriggs v.Collins*,993 F3d.85,88,89,n.4 (1993),the Fifth Circuit laid out **their** interpretation of the *Strickland* prejudice prong holding that:

"in order to avoid turning Strickland into an **automatic rule of reversal** in the non-capital sentencing context,we believe that in deciding such an ineffectiveness claim,a court must determine whether there is a reasonable probability that but for trial counsel's errors the defendant's non-capital sentence would have been *significantly* less harsh ... our reading ... leads us to believe that "prejudice" must be rather **appreciable** before a new trial is warranted in view of counsel's error.If an **appreciable showing of prejudice** is required in the CAPITAL context,a requirement for a showing of **significant prejudice** applies a *fortiori* in the non-capital context.*Id.*,(citations omitted) (emphasis supplied).

## INTERVENING CHANGE OF THE LAW

The above "significant" prejudice rule in *Spriggs*,was **adopted** by the Seventh Circuit in *Durrive v.U.S.* 4 F3d.548,551 (7th.Cir.1993) (holding

32

that although an attorney may be ineffective by causing error,a resultant longer sentence of **6** to **22** months,for example, would not constitute **prejudice within the meaning of** *Strickland*); *see also., Martin v.U.S.*,109 F.3d.1177,1178(7th.Cir.1996) (acknowledging error in court's selection of higher criminal history category,but refusing to entertain the prospect of relief,relying instead on the **significant prejudice rule** enunciated by the Fifth Circuit in *Spriggs*).However,the Supreme Court recently **REVERSED** that "significant" prejudice rule in *Glover v.U.S.*No.**99-8576 (01/09/01)** : "We hold that the Seventh Circuit erred **in engrafting this additional requirement onto the prejudice branch** of the *Strickland* test.This is not the case where trial strategies,in retrospect,might be criticized for leading to a harsher sentence.Here we consider the **sentencing calculation** itself ... if it had been error,would have been correctable on appeal ...it is clear that prejudice flowed from the asserted error.").It is noteworthy that Glover's offense level was increased by **2** levels,resulting in an increased sentence of between **6** and **21** months.His counsel did not press the issue in trial court or raise it on appeal,he eventually filed a *pro-se* §2255 petition to correct his sentence,arguing that his counsel's failure to pursue the issue was ineffective assistance,without which his offense level would have been lower.The District Court denied the motion,determining that under Circuit precedent a 6 to 21 month sentencing increase was not significant enough to amount to prejudice for purposes of *Strickland*.The Seventh Circuit affirmed relying on the *Spriggs* **significant prejudice test** it adopted from the Fifth Circuit,and their misplaced reliance on *Lockhart v.Fretwell,supra,*506 U.S.364 (1993),the Supreme Court REVERSED and held that the Seventh Circuit erred in engrafting onto the prejudice branch

of the *Strickland* test the requirement that any increase in sentence must meet a standard of significance.

After several consultations with the undersigned petitioner soon learnt that **Valle** and **Connors** did not even examine the [relevant] Guidelines or research the APPLICABLE laws involved in regards to the Petitioner's instant offense. *Id. Williamson*[6] at 183 F3d. 462-63 n.5 (holding that "a reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful...**ignorance of relevant law** constitutes an identifiable lapse in constitutionally adequate representation...solid meritorious arguments...should be discovered and brought to the court's attention.") (emphasis supplied). Accordingly, appellate counsel, **Connors** was also **deficient** by not raising these issues on appeal[7], petitioner is willing to submit extrinsic evidence that because **Valle** recommended **Connors** to prosecute his direct appeal, an apparent conflict of interest, may have caused **Connors** not to implicate or subject (his friend/colleague) **Valle** to an ineffective assistance of counsel claim on direct appeal, where the record was fully developed on that particular issue[8]. The record 'conclusively' shows that **Valle** failed to investigate and proffer petitioner's version of the

---

[6] It is interesting to note that the *Williamson* court did not rely on the *Spriggs* **significant prejudice test**, in reaching their decision on an ineffective assistance of counsel claim.

[7] An [ineffective assistance of counsel] claim survives the limited appellate rights preserved by petitioner at the Rule 11 Hearing. *U.S. v. Attar*, 38 F.3d. 727, 732-33 (4th.Cir.1994). *See also, U.S. v. Bushert*, 997 F.2d.1343, 1350 n.18 (11th.Cir.1993) (general waiver of the right to appeal sentence in a plea agreement does not bar appellate review of a claim that the sentence was imposed in violation of certain "fundamental and immutable" constitutional guarantees) (*dicta*)

[8] "A defendant can raise the claim of ineffective assistance of counsel ... on direct appeal if and only if it conclusively appears from the record that his counsel did not provide effective assistance." *U.S. v. Martinez*, 136 F.3d.972, 979 (4th.Cir.1998).

facts;refute and object to the PO's recommendation in the PSR,namely,the aggravated role enhancement that was ultimately imposed.In any event,**Connors** could have raised **Valle's** errors as PLAIN ERRORS. Rule 52(b) of the Federal Rules of Criminal Procedure provides: "PLAIN ERRORS OR DEFECTS AFFECTING SUBSTANTIAL RIGHTS MAY BE NOTICED ALTHOUGH THEY WERE NOT BROUGHT TO THE ATTENTION OF THE COURT.[2] The **Fifth Circuit** has held that: "under Federal Rule of Criminal Procedure 52(b), this court may correct forfeited errors only when the appellant shows that: (1) there is error, (2) the error is plain, and (3) the error affects his substantial rights. If the appellant is able to establish these factors, the decision to correct the forfeited error falls within this court's sound discretion." *U.S. v.Ravitch*, 128 F3d.865,869 (5th.Cir.1997) (emphasis added) (citations omitted).

When a criminal proceeding "loses its character as **a confrontation between adversaries**." *U.S. v. Cronic*,466 U.S.648,656-57 (1984) (emphasis added), the [harm] done is as certain as it is difficult to define. **Connors'** actions in prosecuting the appeal lacked any rational basis,he raised only one issue i.e.,a Speedy Trial violation,while frustrating the very purpose of petitioner's First Appeal[10] as of right. **Connors** failed to raise the above mentioned solid and meritorious issues.*See e.g.,U.S. v.Cook*,45 F3d. 388,395 (10th.Cir.1995) (here the 10th. Circuit held that an attorney

---

[9] "this court has noted that plain error involves a mistake so fundamental as to constitute a 'miscarriage of justice.' " *U.S. v. Ravitch*,128 F3d.865,869 (5th.Cir.1997) (*quoting U.S. v. Brunson*,915 F2d.942,944 (5th.Cir.1990)).

[10] In anticipation of the DOJ's counsel raising the specter that petitioner appellate rights were limited,it must be noted that an ineffective assistance of counsel claim survives that waiver. See *Arrastia v.U.S.*,455 F.2d.736,739 (5th.Cir.1972) "[The right to a direct appeal] is a right which is fundamental to the concept of due process of law.") (citations omitted);*U.S. v.Melancon*,972 F.2d.566,577 (5th.Cir.1992) (same).

who had  failed to raise a clearly meritorious issue on appeal, that was in Judge Easterbrook's colorful parlance " a dead-bang winner" had provided ineffective assistance under *Strickland*.); *U.S. v. Kissick*, 69 F3d.1048,1056 (10th.Cir.1995) (attorney's failure to challenge the use of a prior conviction to classify the defendant as a career offender when that prior conviction is facially insufficient to satisfy the definition of a "Controlled Substance offense" under U.S.S.G § 4B1.2,therefore constitutes deficient performance under *Strickland*);*and U.S. v.Span*,75 F.3d.1383,1387 (9th.Cir.1996)(Reversing defendants convictions,based on ineffective assistance of counsel at trial and on appeal,where defense counsel without any rational basis failed to raise apparent errors).A more pressing issue is presented by the fact that the petitioner was neither consulted by said attorneys about this "doing nothing" strategy nor did he consent to counsels use of that [tactic].Here both **Valle's** and **Connors'** "**doing nothing**" strategy undoubtedly harmed petitioner.Of course petitioner did not know this at the time,petitioner believed both attorneys had conducted a thorough examination of the facts and applicable laws involved.Only through the [assisting] undersigned inmate legal advocate,**Roy Dixon's** careful study of the sentencing transcripts,appellate briefs and the relevant laws e.g.,the U.S.Sentencing Guidelines; Supreme and Circuit precedent,was he able to show that both attorneys provided sub-par representation implicating petitioner's  Sixth Amendment right to effective assistance of counsel at Sentencing and on Appeal.*U.S.Constitution 6th.Amendment.*

"A reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial.To this end the court will indulge

a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance."*Id,Strickland,*466 U.S.at 680.

These statements do not say that hindsight cannot be used.They only say that hindsight cannot be used to second guess a reasonable decision made by the attorney.However the attorney[s] doing nothing about these issues is not a reasonable choice.Counsels failure to raise clearly solid meritorious issues cannot be considered sound strategy.*Id,Williamson, supra.*

"'[F]amiliarity with the structure and basic content of the Guidelines has become a neccessity for counsel who seek to give effective representation.'" *U.S. v.Gaviria,*116 F.3d.1498,1512 (D.C.Cir.1997) (quoting *U.S. v.Day.*969 F.2d.39,43 (3rd.Cir.1992)).In *Gaviria* , defendant met *Strickland's* first test because his lawyer,ignoring case law interpreting the Guidelines career offender provision,gave him flawed advice,which influenced his decision to go to trial.The same principle applies where,as here,counsel ignores a relevant Guideline provision altogether. *See also., U.S.v.Soto,*132 F.3d.56,59 (D.C.Cir.1997) (counsel's failure to seek a 2 point reduction in petitioner's base offense level,fell outside prevailing professional norms and therefore was ineffective).Whether lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision (*Gaviria*); by failing altogether to raise a potentially helpful provision (*Soto*) or by utterly failing to challenge the 2 point upward adjustment (this case),whether petitioner's role was aggravated or not,depends on the particular facts of the case and how well counsel marshals them:for example,it had not been proven that either an aggravating or mitigating role adjustment is appropriate for petitioner's

involvement in the offense or whether the petitioner did organize or take a leading role in the commission of the crime.Counsel could have proven that petitioner did not control any of the other players,did not make key decisions,or claim a larger share of the fruits of the crime.In these circumstances,an enhancement for being a "leader" or "manager" is not appropriate.*See* §3B i . i ,Application Note 4;*U.S.v.Sostre*,967 F.2d.728,733 (1st Cir 1992)(while appellant played an "essential" role in the conspiracy,he did not act in a managerial or supervisory capacity);and *U.S.v.Patriaca*,912 F.Supp.596,621 (D.Mass.1995)(same).

On that same note one cannot imagine a defendant better suited for serious consideration under §4A1.3 p.s or more squarely prejudiced by counsel's failure to raise it.

In other words, [attorney error] give rise to an ineffective assistance claim not because it is connected to some other independent right a defendant is entitled to, but because in itself, it "upset[s] the adversarial balance between defense and prosecution," so that the proceeding is rendered unfair and the punishment [suspect], *Kimmelman v. Morrison*,477 U.S.365,374 (1986) (emphasis added). In anticipation of the DOJ's assertion that even if defense counsel had raised these issues at sentencing, that there is no likelihood that the sentencing court would have granted the horizontal and vertical departures. However, in order to succeed on his claim of ineffective assistance of counsel, defendant must demonstrate only a reasonable probability that the outcome of his sentencing would have been different, this Court should find that he has done so CONVINCINGLY.

It is clear that petitioner was prejudiced within *Strickland and Glover's* test.They amount to errors "so serious that counsel was not

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id Strickland*,466 U.S.at 687. "[O]ur law must not become so caught up in procedural niceties that it fails to sort out simple instances of right from wrong and give reddress for the latter." *ABF Freight System v. NLRB*,510 U.S.317 (1994) (Kennedy, Justice, concurring). The failure of counsel to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel *See e.g , U.S. v.Kissick*,69 F3d.1048,1056 (10th. Cir. 1995); *Auman v.U.S.*,67 F3d.157,161 (8th.Cir.1995) (same);*U.S. v. Headley*,923 F2d.1079,1083-84,(3rd. Cir.1991) [counsel]'s failure to seek potentially fruitful adjustment under section 3B1.2 fell outside "prevailing professional norms" and therefore was ineffective);*U.S. v.Soto*,132 F3d.56,59 (D.C.Cir.1997) (counsel was ineffective for failing to raise §3B1.2 relief for his client,i.e.,a **2** point reduction in the base offense level);*Smith v.U.S.*,871 F.Supp 251,255 (E.D.Va 1994) ("While courts are properly deferential to attorney's discretion, failure to raise an objection to a clear and indisputable error in the [presentence report] is not within the broad range of performance that can be deemed reasonable."); and lastly but in NO way least -- the U.S.Supreme Court recently ruled in *Glover v.U.S.*,No.99-8576 (U.S.Sup.Ct.**1/09/01**)(Justice Kennedy) (In response to Glover's §2255 petition,the Government argued that even if Glover's counsel had been ineffective in the manner charged,the error resulted in a sentence increase of "only" **6** to **21** months and that such a sentence increase did not constitute **significant prejudice**[ii]  which it contended was required under

---

[ii] It is now clear that the Fifth Circuit's **significant prejudice** test (requirement) is **no longer good law**,*see Spriggs*,993 F2d.at 88 (holding **that even** when its clear that an attorney's unreasonable mistake or omission has resulted in an erroneous sentence,the difference in outcome is

prevailing Circuit precedent. Relying on that absurd and untenable theory, the Seventh Circuit rejected petitioner's §2255 motion, without ever considering the merits of his claim of ineffective assistance of counsel. **The Supreme Court** REVERSED the Seventh Circuit's dismissal of the petition. Essentially, the Court held that the Seventh Circuit had erred when it grafted on the **prejudice branch** of the *Strickland* test a requirement that any increase in sentence must **meet a standard of significance. It concluded that the Seventh Circuit had derived the substance of its "not well considered" rule from** *Lockhart v. Fretwell*, 506 U.S. 364 (1993) **where the Court held that in some circumstances a mere difference in outcome will not suffice to establish prejudice.** The Court then held that "[a]lthough the amount by which a defendant's sentence is increased by a particular decision may be a factor to consider in determining whether counsel's performance **in failing to argue** the point constitutes ineffective assistance, under a determinate system of constrained discretion such as the Sentencing Guidelines it cannot serve **as a bar to a showing of prejudice** ...it is clear that **prejudice** flowed from the asserted claim in sentencing." *Id.*) (emphasis supplied).

## B

It is clear that petitioner was prejudiced within *Strickland* and *Glover's* meaning There is a 'reasonable probability' that had both counsels not erred, the results would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome.", *Id, Strickland, supra* 466 U.S. at 685-87. Based on the above petitioner could

---

insufficient to establish prejudice under Strickland analysis; only if it is likely that the defendant's sentence would have been "significantly less harsh" can there be a viable claim of ineffectiveness).

have received a lower sentence.E.g.,since the enhancement was clearly incorrect under §3B1.1,it must be assumed that an appropriate correction would have been made had petitioner's counsel made the objection and or raised it on direct appeal.In the likelihood of success at either stage of the proceedings,petitioner's base offense level would have remained at level 23.Futhermore,had counsel at sentencing moved the court for a downward departure pursuant to §4A1 3,i.e ,from Category III to Category II;BASED ON THE MITIGATING FACTS DISCUSSED INFRA, a strong possibility exists thereto,that the Court may have granted the horizontal move.

Given that the sentencing court originally chose the middle of the Guidelines range,it is likely that petitioner would have received a sentence of at least 56 months i.e.,with base offense level 23 and Criminal History Category II.This analysis assumes of course,that the sentencing proceeding would have been otherwise unaffected.Such assumption are proper because the relevant,question is what would have occured 'but for' the ineffective assistance.The government cannot refute the conclusion that petitioner was prejudiced by his counsel's errors[12] by claiming that there were arguements available that the government **could have** but did not,raise against petitioner at his sentencing.Thus petitioner has demonstrated a substantial likelihood that his counsel's ineffective assistance of counsel in violation of the Sixth Amendment,and having demonstrated cause and prejudice for his failure to appeal on this ground,petitioner is entitled to **habeas relief** ... it is likely in this case that resentencing will benefit petitioner ... the text of the **habeas statute** provides some suggestion that vacation and resentencing is not the sole remedy when a district court upholds an

---

[12] Even though there might be arguements available to the government at resentencing,they cannot demonstrate that petitioner's enhancement was harmless error.

objection to a sentencing proceeding,as it provides that the court may 'vacate,set aside or correct the sentence.' 28 U.S.C.§2255 (emphasis added).IF THE INCLUSION OF THE WORD 'correct' in §2255 is not surplusage,it suggests that courts have the power to modify petitioner's existing sentence,as opposed to vacating the sentence and imposing a new one  *See Smith*,871 F.Supp.at 256-57.

## EVIDENTIARY HEARING

It is important to recognize that the [record] of the instant case does not contain sufficient facts for this court to reach a meaningful decision,hence there is a need for an EVIDENTIARY HEARING."The district court should hold a full hearing on any issues not resolved because of an insufficient record.Ultimately,the final determination of whether or not counsel rendered reasonably effective assistance of counsel requires an inquiry into counsel's actual performance.That review must be based upon an adequate record,and [a] review of Fifth Circuit law indicates that this Court's methodology involves an inquiry into the actual performance of counsel in conducting the defense and a determination whether reasonably effective assistance was rendered based on the totality of the circumstances and the entire record.This Circuit does not blindly accept speculative and inconcrete claims of 'what might have been if.'If an appellant can point to specific examples of ineffectiveness,we have not hesitated to grant a ... hearing"*Clark v.Blackburn*.619 F2d.431,434 (1980).

It is the undersigned inmate legal advocate position that this Court's final decision should be made not only upon a review of the instant record,but **with the benefit of an evidentiary hearing attended by**

**Ernesto Uribe-Leon, Joe Valle and Joe Connors.**[13] Elementary considerations of [fairness] dictate that petitioner should be granted an evidentiary hearing to determine whether the failure of **Valle** to object to the aggravated role enhancement constituted ineffective assistance, and whether **Connors'** failure to urge the issue of ineffective assistance of **Valle** constituted an ACTUAL CONFLICT OF INTEREST, further implicating petitioner's constitutional rights. The record presently before this Honorable Court is insufficient to allow for a determination on whether **Valle's** and **Connors'** decision[s] were reasonable. *Id, Nichols v. U.S.* 1137, 1145-46 (7th.Cir.1996). In anticipation that this Court may order an [expansion] of the record via **affidavits** etc., *see* Rule 7 of the Rules foll. §2255. It is important to recognize that because the FACTS, most of which *de hors* the court's record — [hinges] on the critical issue of [CREDIBILITY], an issue not readily resolved by AFFIDAVITS. The Supreme Court has cautioned that "when the issue is one of **CREDIBILITY** resolution on the basis of AFFIDAVITS can *rarely be conclusive,*"*id, Blackledge,* 431 U.S. at 82 n.25(quoting Advisory Committee Note to Rule 7, foll.§2255 and *Raines v. U.S.* 423 F2d.526,530 (4th.cir.1977)). As the *Raines* court aptly put it:

> "There will remain, however a catergory of petitions, usually involving **credibility**, that will require an evidentiary hearing in open court ... unquestionably there will arise cases which cannot be fairly determined without the presence of the petitioner."*id, Raines,*
423 F2d. at 530,(emphasis added)(citations omitted).

---

[13] Nor does this case involve no more than conclusory assertions which might well justify dismissing a petition prior to an evidentiary hearing. *Friedman v. U.S.,* 588 F2d. 1010,1017 (5th.cir.1979).

43

Not surprisingly,the Supreme Court in *Machibroda*[14];*Fontaine*[15];*Sanders*[16] ;and *Blackledge*,in remanding for hearings,adverted to the statutory possibility in some instances to dispense with the petitioner's presence,but did not disturb the *Hayman* standard.It is certainly not an understatement to say that *Hayman* is still a correct statement of law.

"The question whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record[17].*Byrne v.Butler*,845 F2d.501,512 (5th.cir.1988).If the district court cannot resolve the allegations without examining evidence beyond the record,it must hold a hearing."*U.S.v.Smith*,915 F2d.959,964 (5th.cir.1990)(citing *Clark v.Blackburn*,619 F2d.431,432 (5th.cir.1980)) (emphasis added).

[Palpable incredibility] cannot be measured in a vacuum,but rather must be determined in the light of commonsense recognition of real world practices in proving that both before and after petitioner's sentencing — defense counsel[s] conduct were in fact a charade.It would surely be difficult given the likely sanctions to be visited on an attorney,who subsequently admitted participating.Yet the fact that the charade does occassionally occur is true beyond any reasonable doubt.

# CONCLUSION

---

[14] *Machibroda v.U.S.*368 U.S.487 (1962).

[15] *Fontaine v.U.S.* 411 U.S.213,(1973).

[16] *Sanders v.U.S.*373 U.S.1 (1963).

[17] Petitioner notes that since this case involves allegations that [primarily] concerned occurrences off the record,retort to the record alone might not cast much light on the claim;and the circumstances alleged are [not] of a kind that the District Judge could completely resolve by drawing on his own personal knowledge or recollection.*id,Machibroda.*368 U.S.at 495.

Of course, the fact that charades have occured in the past does not prove that a charade did in fact occur in this case. In determining if a hearing is required under Rule 8(a) and the "conclusively show" standard where [material] facts are in dispute as in the case at bar, a [full] evidentiary is

is mandated[18], and **Petitioner's "claim should go forward."**
*Id, Nichols,* 75 F.3d. at 1146 (ROVNER, Circuit Judge, concurring in judgement.).

Respectfully submitted

ERNESTO URIBE DeLEON

by:

Roy Dixon\Inmate Legal Advocate, 28 CFR§543.

---

[18] In order for petitioner to receive any real measure of fairness and justice, Fifth Circuit law provides that if an evidentiary hearing is ordered by this Court, Rule 8(c), 28 U.S.C. foll. §2255 comes into play wherein "the Judge shall appoint counsel for an indigent defendant ..." *U.S. v. Vasquez,* 7 F3d. 492, 496-97 (5th. cir. 1982). Petitioner is indigent and would need the assistance of counsel appointed by the Court, so that the playing field can have some semblance of being reasonable — in relation to the technical and formative battle readiness — which the **adversary** has and the petitioner DO NOT.

# CERTIFICATE OF SERVICE

I declare under penalty of perjury pursuant to 28 U.S.C.§1746,

that the foregoing instrument was **placed in the prison mail box** ;with pre-paid first

class U.S.postage addressed to the following parties on the date below.The original and two

copies mailed to:

> **CLERK/ U.S.DISTRICT COURT**
> **Attn:MAXINE.**
> **600 E. HARRISON #101**
> **BROWNSVILLE,TX,78520**

and one copy of the same to:

> **U.S.ATTORNEY'S OFFICE**
> **Mr.Mervyn M.Mosbacker**
> **1036 E. LEVEE St.**
> **BROWNSVILLE,TX,78520**

On this **February 7,2001**.

Sincerely,

ERNESTO URIBE DeLEON
Reg.No.82476-079

by:

Roy Dixon\Inmate Legal
Advocate,28 CFR§543.

---

## PRAYER

Wherefore it is prayed that the God of Creation Rule in the Hearts of men and that this

Court Rule wisely.

---

* This certificate complies with the provisions of *Houston v.Lack*,487 U.S.266,(1988) and
Federal Rules of Appellate Procedure.Rule 25(a) — "Papers filed by an inmate confined in
an institution are timely filed if deposited in the institution's internal mail system on or
before the last day of filing."*id.*

46