# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 7 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| Respondent/ Government (DOJ)[1] | § | |
| v. | § | USDC Nos. C.A. No. B-01-27 |
| **ERNESTO URIBE-DeLEON** | § | C.R. No. B-96-251 |
| Petitioner/ Defendant | § | |

## PETITIONER'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION.

TO THE HONORABLE DISTRICT JUDGE OF THIS COURT:

COMES NOW, **E. URIBE-DeLEON**, Petitioner, *in pro-per* and with the assistance of the undersigned assisting inmate, and respectfully lodges these objections to the **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION** (R & R). Dated April 24, 2001:

### 1

The Magistrate Judge (Mag. J.) makes a recommendation "that the government's Motion to Dismiss be **GRANTED.**" (R & R at p.3). Accordingly reference to what was proffered in the DOJ'S brief is appropriate. Counsel for the DOJ, Mr.Turner correctly points out that "the sole issue in the instant controversy is WHETHER (PETITIONER'S ) TRIAL COUNSEL REASONABLY DECIDED NOT TO PURSUE AN OBJECTION TO THE RECOMMENDATION THAT (PETITIONER'S ) OFFENSE LEVEL BE ADJUSTED FOR HIS ROLE IN THE OFFENSE." (DOJ'S Br. At p.16) (emphasis supplied).

---

[1] DOJ is the Department of Justice.

2

In attempting to prove to this Court that the above claim was meritless, Mr. Turner stated:

>"Viewing the issue from counsel's perspective at the time of sentencing, it is clear 1 [**from the provisions of the PSR**] that the two level adjustment was justified. (Petitioner) 2 [**exercised some decision making authority with respect to when loads would be shipped from Brownsville**]; 3 [**he recruited drivers**]; 4 [**stored contraband and expected a large portion of the proceeds than the average participant**]; and 5 [the activity **was extensive**]. USSG §3B1.1(c), comment. n. 4. 6 [If counsel had elected to object to the proposed adjustment, he risked the three level reduction for acceptance of responsibility — **he would, in effect, have been objecting to the conduct for which (Petitioner) was found guilty**]." (DOJ's Br. at p.16) (emphasis added) (custom marked for later reference).

Petitioner will address each of the above custom markings in turn:

"1 [**from the provisions of the PSR**]." At this juncture the information contained in the PSR is in DISPUTE, and therein lies the gravamen of petitioner's claim — that at both prior and during sentencing trial counsel Mr. Valle (Valle) without good reason decided not to object to the inaccuracies and misleading proffers made in the PSR by the probation officer. It is important to recognize that petitioner has a primary language of Spanish and up to this day hardly understands the basics of the English language, muchless to understand the implicating LEGAL language contained in his PSR. Of course petitioner did not know this at that time, up to and including the time his direct appeal was litigated. Petitioner an illiterate in the English language depended on both of his attorneys for cruicial legal

advice and support by way of [effective representation] as per the dictates of the Sixth Amendment.

Petitioner respectfully states that had any one of his attorneys provided him with a [Spanish] version of his PSR as per the facts of **the offense conduct,** he would have surely moved counsel to challenge and refute such. It is well established that although a defense attorney may be well versed in **the Rule of Law** and its myriad of applications, the defendant **is more familiar** with the **material facts of his or her own case.** While it is unsettling for the petitioner to call to this Court's attention the factual inaccuracies and bald conclusionary statements contained therein, at this stage of the proceedings, moreso when both attorneys had a prior opportunity to do so, there exist no other viable remedy than the instant action to avert a fundamental miscarriage of justice and to give proper redress where justice is due. Petitioner have shown [cause] for this double procedural default, i.e., Ineffective Assistance of Counsel at sentencing and on appeal. *See **Hughes v. Booker,*** 203 F.3d 894, 895 (5th.Cir.2000).

Here the district court found that Petitioner was an organizer, leader, manager, or supervisor of the conspiracy based soley on information in the PSR prepared by the U.S.Probation Office. The Fifth Circuit has held:

"Under the Sentencing Guidelines, the party who seeks an adjustment in the base offense level — here, the government — must prove by a preponderance of the evidence that the adjustment is warranted. The district court is free to consider all relevant evidence — even inadmissible evidence — as long as the evidence relied upon has 'sufficient indicia of reliability to support its probable accuracy.' This Court has previously held that the unsworn assertions of (a government official) do not provide, by themselves, a sufficiently reliable basis on which to sentence a defendant." ***U.S. v. Patterson,*** 962 F.2d 409,415 (5th.Cir.1992) (*quoting **U.S. v. Alfaro,***

CUtePDF - www.fastio.com

919 F.2d 962, 964-  (5th.Cir.1990) *and U.S. v. hnson*, 823 F.2d 840,842
(5th.Cir.1987)). *See also* U.S.S.G. §6A1.3(b) (resolution of disputed facts
according to Fed.R.Crim.P. 32); Fed.R.Crim.P. 32(c)(3)(D).

"[A] presentence report generally bears sufficient indicia of reliability
to be considered as evidence[2] by the trial judge in making the factual
determinations required by the Guidelines." *U.S. v. Elwood*, 999 F.2d 814,
817 (5th.Cir.1993). In this case, however, the PSR lent no support for the
essential factual determinations about petitioner's alleged leadership role;
the PSR merely gave a recitation of the conclusions of the U.S.Customs and
the probation officer. *Id.* Importantly, the Fifth Circuit have addressed a
similar problem in *Patterson* and *Elwood* (cited above), in which the DOJ
attempted to support an offense level increase for the defendant's role as a
manager or supervisor of a conspiracy. The Fifth Circuit vacated both
Elwood's and Patterson's sentences, finding that: **"Bald, conclusionary
statements do not acquire the patina of reliability by mere inclusion in
the PSR**. As in Patterson, we must vacate and remand **for a factual
determination** whether Elwood in fact had **the requisite leadership role** in
the offense to warrant an adjustment." *Id, Elwood*, 999 F.2d at 817-18
(emphasis added). "When a DISPUTED factual question is a significant
factor in the sentencing determination, the district court judge [must have]
some acceptable **evidential basis** in order **to resolve** the matter against the
defendant." *U.S. v. Johnson*, 823 F.2d 840,842 (5th.Cir.1987) (emphasis
added). There is no doubt that the PSR is in DISPUTE in the instant matter,
and an EVIDENTIAL BASIS should be afforded petitioner in order to

---

[2] *But see, U.S. v. Murillo*, 902 F.2d 1169,1172, n.9 (5th.Cir.1990) ("In so concluding,
however, we express no opinion on **what weight** a trial judge **should give the
information contained in the (PSR)**. We prefer to leave that decision to the discretion
of the district courts where it best belongs.") (emphasis supplied).

resolve the matter against him, nor does this case involve no more than conclusory assertions which might well justify dismissing a petition prior to an evidentiary hearing, *Friedman v. U.S*, 588 F.2d 1010, 1017 (5th.Cir.1979). The following is Petitioner's attempt to set the record straight in reply to portions of the DOJ's Brief at pgs. 13-14. **(1)** There is no evidence establishing that petitioner was involved in  large scale drug trafficking or that he was ever contacted by the "Reyes Organization," **no** reliable evidence was ever tended to form the basis to make such an accusation, more is needed for the mere fact that this is a very serious implication. **(2)** Petitioner never purchased any tractor-trailer during that period, had the DOJ proof of such a purchase, it would be definitely be Exhibit 'A.' **(3)** "By March 24, 1992, **word on the street** was that (petitioner) was readying about 500 pounds of marijuana for shipment to Houston," get real, "word on the street" neither Mr.Turner nor the probation officer have offered any scintilla of reliable evidence to support this allegation. Thereafter, the dates in the PSR suddenly jumps from that date in 1992 to 1994, the instant offense (see PSR at ¶'s 24 to 25).

To top it all off, Mr.Turner MISLEADINGLY suggest that petitioner "acknowledged his role in the offense," attempting to reference PSR ¶ 34 and suspiciously ignoring ¶ 35 which follows and says: "**It appears** that the defendant admits to his role in the instant offense." For the record, the petitioner respectfully submits that during the course of the interview referenced in the PSR at ¶ 34, while he admitted to being guilty of the instant offense, inasmuch as he had already entered a plea of guilty to counts 1 & 2 of the indictments, prior to the interview. He admitted and acknowledged that his criminal conduct violated **21 U.S.C. §§ 841(a) and 846,** at [no] time did he recall ever admitting to being a leader, organizer,

6

manager or supervisor in the instant offense. In sum he admitted to violating §841 & §846, NOT §3B1.1(c). As even, the fabulous and well experienced Mr. Turner knows — these are two very different animals.

2[exercised some decision making authority with respect to when loads would be shipped from Brownsville]. Mr. Turner reads more into what the PSR says. What the PSR says, is that: "Ernesto Uribe-DeLeon told the CI that the **marijuana belonged to someone else** and that **it was destined for Houston** where there was already about 300 lbs. of marijuana stashed. Ernesto Uribe-DeLeon also told the CI that ... **the total marijuana load (600 lbs.) would be transported out of Texas to an unknown destination.**" (PSR at ¶ 25) (emphasis added). Gleaning from the above, it is plain as the nose on the face clear that that is not the type of "decision making authority" contemplated by the Guidelines or this Circuit. *See e.g., U.S. v. Ronning*, 47 F.3d 710, 711-12 (5th.Cir.1995):

> " To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor **of one or more other participants**. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised **management responsibility** over the property, assets, or activities of a criminal organization ... the note recognizes an exception to the control requirement if a defendant exercises mangement responsibility over a criminal organization's property, assets, or activities. The courts that have employed this exception, however, have applied it **only to the three-level §3B1.1(b)** enhancement for a manager ... noting that the exception **would not apply to §3B1.1(c) because that**

CMsPDF - www.fesita.com

subsectio͡   does not contemplate a cri͡ inal organization ...
applying a plain-meaning approach to 'leader' and 'organizer,'
we note that their definitions relate to supervision of people only.
Leader is defined as a person who leads as a commander ...
organizer is defined as a person who travels for the purpose of
establishing new organizations. A commander commands people,
and organizations are composed of people. **Unlike a manager, a
leader's or organizer's actions must directly affect other
people** ... management responsibility does not make a leader or
organizer."*Id,*(emphasis added)(citations omitted).

There is no evidence that petitioner managed or supervised any of his
co-defendants or any other people in connection with the illegal acts. Absent
such evidence, this Court should provide petitioner the opportunity to
supplement the Court's record with affidavits or sworn testimony. It is
noteworthy, that none of the investigating and arresting officers or
petitioner's co-defendants, proffered any affidavits or sworn testimony to
support the inference that petitioner played an aggravating role in the instant
offense. *See e.g., U.S. v. Jobe,* 77 F.3d 1461,1476 (5th.Cir.1996)
("§3B1.1(c) requires that a defendant be the organizer or leader **of at least
one other participant** in the crime and that he assert control or influence
over at least that one participant.") (citations and footnote omitted).

3[**he recruited drivers**]. The **only** driver in the instant offense was a
bona fide government informer (CI) who worked for the government at
least 2 years prior to the instant offense, and as will be shown below
cannot be deemed [a participant] for §3B1.1 purposes. Unbeknownst to
petitioner, he recruited an undercover government informer to transport the marijuana.
Importantly, the CI took possession of the marijuana **propagating** to the conspirators

8

that he would be able to deliver the marijuana in exchange for a percentage of their value ($50.00 per pound). It is well established that a defendant CANNOT CONSPIRE with a government informer. "We acknowledge that a government agent **cannot be a co-conspirator** and that **there can be no conspiracy between one defendant and a government informer.**" *U.S. v. Manotas-Mejia*, 824 F.2d 360,365 (5th.Cir.1987) (*quoting U.S. v. Martino*, 648 F.2d 367,405 (5th.Cir.1981), *cert.denied*, 456 U.S 949 (1982)) (emphasis added). The undercover informer, upon receiving the  contraband immediately turned over the marijuana to the Customs agents (PSR at ¶ 26).

Because a defendant may be held **liable for criminal conduct** that he did not commit, petitioner will show that he cannot be held liable for whatever actions or conduct  the undercover informer undertook, please see for example, the following theories of liability :

(1) THE PINKERTON THEORY OF LIABILITY:


"The Pinkerton vicarious-liability rationale is based upon an agreement or
common purpose shared by coconspirators; they are partners in crime, and  the act of one in furtherance of the unlawful plan is the act of all." *U.S. v. Acosta*, 763 F.2d 671,681 (5th.Cir.1985), *see also, U.S. v. Gobert*, 139 F.3d 436,439 n..22 (5th.Cir.1998) (quoting *Pinkerton v. U.S*. 328 U.S. 640,647    (1946)) ("A party to a continuing conspiracy may be responsible for a substantive offense committed by a coconspirator in furtherance of the conspiracy, even though that party does not participate in the substantive offense or have any knowledge of it.");


(2) AIDER AND ABETTOR LIABILITY:

Aiding and abetting means to assist the perpetrator of a crime. *See U.S. v. Jobe*, 77 F.3d 1461 (5th.Cir.1996). The defendant must intentionally [aid] another in the commission of an offense, *see U.S. v. Gabriel*, 125 F.3d 89

(2nd.Cir.1997). Moreover, because a defendant cannot aid and abet himself in the commission of a crime, another person must commit the offense, *see Morgan v. U.S.* 159 F.2d 85 (10th.Cir.1947).

Although Federal Criminal Law recognizes no distinctions between aiders and abettors, and principals, *id*, 18 U.S.C. §2(a), commonsense dictates that from a common law perspective [persons] connected to a crime may be termed — accessories, aiders and abettors, or principals, *see e.g., Mazell v. Evatt*, 88 F.3d 263 (4th.Cir.1996) (recognizing common law principles of differentiating among the players in an offense).

Gleaning from the above theories of LIABILITY, it is clear that in the instant offense of CONSPIRACY, a conspirator is **liable** for the acts of his or her coconspirators, because said CI was **not a coconspirator**, he could not be a **partner in crime** or even one of the **principals**, therefore it stands to reason that, whatever actions he may have undertaken **WAS NOT CRIMINAL**. *See e.g., U.S. v. Desimone*, 119 F.3d 217 (2nd.Cir.1997) (A PERSON ACTING AS A GOVERNMENT AGENT LACKS THE CRIMINAL INTENT NECESSARY TO RENDER HIM A BONA FIDE COCONSPIRATOR). This is not to say that Impossibility of Performance of the intended object is a defense to a charge of conspiracy, *see e.g., U.S. v. Clemente,* 22 F.3d 477 (2nd.Cir.1994), *cert.denied,* 513 U.S. 900 (1994). In this case — **Impossibility of Performance** raises the specter of [LEGAL IMPOSSIBILITY], that is, the petitioner and his co-defendants could not CONSPIRE with the CI for the transportation of the marijuana that they delivered to him. This fact is brought to the Court's attention to aid in its factual finding for §3B1.1(c) purposes, wherein **Impossibility of Performance** is certainly a [factor] to be considered, because a person who purports to join a conspiracy while in fact acting on behalf of the government in the secret role of an informer cannot be held liable as a conspirator *U.S. v. Chase,* 372 F.2d 453 (4th.Cir.1967), *cert. denied,* 387 U.S. 907 (1967). *See also,* **§3B1.1, comment. (n. 1):**

CAMPDF - www.texia.com

"A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." Thus for all practical purposes the CI cannot be deemed a participant for a §3B1.1(c) enhancement against petitioner.

4[stored contraband and expected a large portion of the

proceeds than the average participant]; There is certainly no evidence to support this factual assertion made by Mr. Turner that petitioner stored the contraband, not even in the disputed PSR. The CI reported that he was going to be paid $50.00 per pound, PSR at ¶ 25; and petitioner would be receiving $25.00 per pound, PSR at ¶ 26. In doing the math, who really expected a larger portion of the proceeds, certainly not the petitioner.

5[the activity was extensive]; It would do well to remind counsel, that §3B1.1(c) does not contain the "was ... extensive" language that is found in §3B1.1(a) and §3B1.1(b). Because petitioner was enhanced under §3B1.1(c), the "was extensive" language is inapplicable in the present situation for affirming the adjustment.

6[If counsel had elected to object to the proposed adjustment, he risked the three level reduction for acceptance of responsibility — he would, in effect, have been objecting to the conduct for which (Petitioner) was found guilty]." As already explained above, petitioner admitted to his criminal conduct that violated the offense of conviction — he timely provided complete information to the DOJ concerning his own involvement in the offense; he also timely notified the DOJ of his intention to enter a plea of guilty, thereby permitting the DOJ to avoid preparing for trial and permitted

11

this Honorable Court to allocate its resources efficiently, accordingly, he satisfied the requirements and paradigms of §3B1.1(b) and as a consequence was granted a 3-level reduction for Acceptance of Responsibility, *see also*, §3B1.1 comment. n. 1, " truthfully admitting the conduct comprising the offenses of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct)," (quoted in relevant part). In this case petitioner truthfully admitted to his own criminal conduct that violated 21 U.S.C. §§ 841(a) & 846.

At no time did he ever admit to being a manager, leader, organizer, or supervisor  in the instant offense. Petitioner requests that the record be set straight, he is willing to submit affidavits and or provide this Court with sworn testimony to that effect. Therefore for Mr.Turner to suggest that — "had counsel elected to object to the proposed adjustment, he risked the three level reduction for acceptance of responsibility — **he would, in effect, have been objecting to the conduct for which (Petitioner) was found guilty,**" is MISLEADING and should not be countenanced by this Court. Petitioner entered a plea of [guilty] to violating the above drug statutes, he never entered a plea of guilty to violating §3B1.1(c).

## 2

Both the DOJ's claim and the Mag.Judge's recommendation advanced — that trial counsel was not ineffective for failing to object to the enhancement, and appellate counsel was not ineffective for failing to raise a losing argument, thus lacks merit. Indeed, petitioner is surprised that the

above mentioned pa..ies. relies not only on the [u.sputed] PSR[3]. but also on a record so obviously flawed by the failings of constitutionally ineffective counsel, would even offer such a theory. *See U.S. v. Soto*, 132 F.3d 56,59 (D.C.Cir.1997) ("[F]amiliarity with the structure and basic content of the Guidelines ... has become a necessity for counsel who seek to give effective representation.")*(quoting U.S. v. Day*, 969 F.2d 39,43 (3d.Cir.1992)); and *U.S. v. Philips*, 210 F.3d 345,351 (5th.Cir.2000) ("Had the enhancement (2 level enhancement under §3C1.1) not been applied to him, his sentencing range would have been between 121 and 151 months, well below the 188 months he actually received for each offense. Thus, he received a sentence which was at least thirty-seven months longer than appropriate given the district court's findings. Because this demonstrable enhancement was ultimately solely attributable to counsel's failure to raise the issue on appeal, **we hold that Philips has shown prejudice**, this result mirrors our case law dealing with prejudice in the context of a plain error analysis. *See U.S. v. Cabral-Castillo*, 35 F.3d 182,189 (5th.Cir.1994) (noting that one of the elements of a plain error analysis is whether the error affected substantial rights, which involves consideration of whether the defendant has shown prejudice). We have previously found that sentencing errors resulting in longer sentences are prejudicial for purposes of a plain error analysis.").

At this stage of the proceedings, this Honorable Court should [decline] to find that petitioner played an aggravating role without first having factual findings on this point.*Id, Philips* at n.6.

---

[3] The Court adopted the PSR's unobjected-to findings, under Fed.R.Crim.P.32, the district court must make findings on contested facts in the PSR or adopt the PSR in its entirety. *See U.S. v. Rickett*, 89 F.3d 224, 226 (5th.Cir.1996). In this case because trial counsel failed to object to said enhancement, this in and by itself precluded the Court from making a Rule 32 (c) (3)(D) and §6A1.3(b) finding of reliability. *Id, Alfaro*, 919 F.2d at 964 n. 5.

CibPDF - www.fineprint.com

As a matter of additional import, this Court should not be persuaded by the DOJ argument that:

> "[An] analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 US 364, 113 S.Ct. 838,842 (1993).

The Supreme Court recently explained in *Glover v. U.S.*__U.S.__, 148 L.Ed 2d 604, 610-11 (2001), that:

> "Our holding in *Lockhart* does not supplant the *Strickland* analysis. *See Williams v. Taylor*, 529 US 362, 393 (2000) ('Cases such as *Nix v. Whiteside*, 475 US 157 (1986), and *Lockhart v. Fretwell*, 506 US 364 (1993), do not justify a departure from a straight forward application of *Strickland* when the ineffectiveness of counsel *does* deprive the defendant of a substantive or procedural right to which the law entitles him ... [t]he determinative question — whether there is 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' — remains unchanged'). The Seventh Circuit was incorrect to rely on *Lockhart* to deny relief to persons attacking their sentence who might show deficient performance in counsel's failure to object to an error of law affecting the calculation of a sentence ... quite to the contrary, our jurisprudence suggests that any amount of jail

time has Sixth Amendment significance  ” (emphasis in
the original) (quoted in relevant part).


### 3

In sum this Court should find that petitioner's counsels provided
ineffective assistance at both sentencing and on appeal for not challenging
the aggravated role enhancement. Petitioner will show why an evidentiary
hearing is necessary, in support thereof, please see the following:


1. As the Fifth Circuit “has frequently explained, the decision to enhance a
sentence will be upheld if it results from a legally correct application of the
Guidelines to FACTUAL FINDINGS **THAT ARE NOT CLEARLY
ERRONEOUS**.” *Id, Jobe*, 77 F.3d at 1476.(emphasis added).

2. An evidentiary hearing is necessary to determine whether Valle's failure
to object and Connor's failure to raise the issue on appeal was reasonable.

3. There is no statement from Valle in the record explaining his decision not
to object, further fact finding is necessary to determine whether Valle's
decision was reasonable. Perhaps Valle was in possession of facts not
present in the record that motivated his decision not to object. *See Nichols
v. U.S.* 75 F.3d 1137, 1144-45 (7th.Cir.1996) (Reversing and remanding for
an evidentiary hearing to determine whether defense counsel's decision not
to object was reasonable.);and *U.S. v.Philips*, 210 F.3d 345, 352-53
(Finding that appellate counsel was ineffective for not challenging the
obstruction of justice enhancement on appeal.).

4. In passing sentence in this case the Judge accepted the unobjected-to PSR
and did not suggest that he relied on a recollection of any other evidence to
support the enhancement.

# CERTIFICATE OF SERVICE

I declare, under penalty of perjury, that the foregoing instrument is true and correct, pursuant to 28 U.S.C. §1746. EXECUTED on the date below.

     I also hereby CERTIFY that I have delivered said documents to the following parties, via first class mail, pre-paid and deposited in the Prison Mail Box pursuant to the Mail Box Rule*. That being the original and two (2) copies of said document to the DISTRICT COURT addressed to :

> ATTN: MAXINE/CLERK
> U.S. District Court, (S.D.TX.)
> 600 E.HARRISON #101
> BROWNSVILLE, TX. 78520.

and one (1) copy of the same to the U.S.ATTORNEY'S OFFICE at:

> DOJ Counsel / S.D.TX.
> **Mr. James Turner, Esq.,**
> 910 Travis # 1500/ Box 61129
> HOUSTON, TX..77208-1129

On 05 / 01 , 2001.

Sincerely,

ERNESTO URIBE-DeLEON

**By:**

**ROY DIXON,**
ASSISTING INMATE
A/c.# 66303079

**PRAYER :** Wherefore, it is prayed that the God of creation rule in the hearts of men and that this Honorable Court grant the requested relief.

---

*The certificate complies with the provisions of the U.S.Supreme Court's decision in *Houston v. Lack*, 487 U.S.266 (1988) and as such the documents served herein are deemed filed this date by operation of law. *See also,Fed.R.App.P.25(a)*.

16