7

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FI'

**JUN 2 1 2001**

Michael I. ... ..y
Clerk of Court

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | § |  |
| Respondent/ Government (DOJ)[1] | § |  |
| v. | § | **USDC Nos. C.A. No. B-01-27** |
| **ERNESTO URIBE-DeLEON** | § | **C.R. No. B-96-251** |
| Petitioner/ Defendant | § |  |

## PETITIONER'S MOTION TO RECONSIDER ORDER DENYING § 2255 RELIEF

TO THE HONORABLE **FILEMON B. VELA,** JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:

COMES NOW, **Ernesto URIBE-DeLEON**, Petitioner, *in pro-per* and with the assistance of the undersigned assisting inmate, files this Motion to Reconsider Order denying §2255 Relief, and shows this Honorable Court as follows:

### 1

In an order dated May 18, 2001, the Court denied petitioner's motion to vacate and or set aside the INSTANT sentence pursuant to 28 U.S.C. §2255. Petitioner hereby requests that the Court reconsider that denial. In 1999, petitioner pleaded guilty to a charge of possession with intent to distribute marijuana, in violation of 21 U.S.C. §841(a). Although he received a 3 point downward adjustment for acceptance of responsibility pursuant to U.S.S.G. §3E1.1, Petitioner's overall sentence was enhanced by 2 points in the base offense level, for being a leader, manager, supervisor, or

---

[1] DOJ is the Department of Justice.

organizer in the instant offense pursuant to U.S.S.G.§3B1.1(c). Because of said enhancement, the sentence was 19 m... ...ns greater than the sentence that would have resulted w **Valle** ithout application of said Guideline enhancement. Petitioner faults trial counsel **Mr.Joe Valle (Valle)** for providing him with ineffective assistance of counsel, in abrogation of his Sixth Amendment to effective representation at sentencing, although no evidence was introduced at petitioner's sentencing hearing to support said enhancement, e.g., covert tape transcripts; sworn affidavits by the agents who worked the case, or admissions made by the petitioner in open court during the Rule 11 hearing; **Valle** failed to contest the accuracy of said factual conclusion of leadership role made out in the PSR. Of course, the Judge ultimately accepted such, as true and factual, for the mere fact that **Valle** failed to object to said factual findings failing to safeguard petitioner's due process rights to a fair sentencing procedure, particularly the right to be sentenced on the basis of accurate information, all of which had the cummulative effect of producing no [clear] record of the resolution of disputed FACTS available to a reviewing court. Petitioner has made out a prima facie claim of a **Rule 32** violation, demonstrating among other things, that:

(1) **Valle** failed to comply with his obligation to review the PSR with him, in regards to discussing the enhancement and the allegations made out by the probation officer in support of such. The only area of the PSR **Valle** *did discuss with petitioner, was petitioner's prior convictions;*

(2) **Valle** did not give petitioner a copy of the PSR until **5 days** before sentencing, knowing fully well that **petitioner could not read, write or speak the English language sufficiently to comprehend what was proffered in the PSR**, counsel made no attempt to have either his bi-lingual

CMxPDF - www.texis.com

assistant or himself at the least, translate the relevant portions of the PSR into the Spanish language to aid petitioner. **Valle** was cognizant of the fact that although he may have been versed in the law, he definitely was not versed in the facts of the instant case as petitioner was, and therefore should have given due deferrence to petitioner's version of the facts, or at the least, given petitioner the chance to review the **probation officer's version of the facts**. **Valle** knew fully well that once he did not object to the PSR findings and recommendations, that such findings and recommendations would automatically be adopted by this Court, resulting in the imposition of a lengthier sentence. Accordingly, because of **Valle's** mishaps and short-comings petitioner was constructively denied the opportunity to read and challenge the factual inaccuracies;

(3) It came as no surprise that after sentencing, **Valle sought to console petitioner**, telling him among other things, that he need not worry. that he knew just the attorney who would help with the direct appeal. **Valle** referred petitioner to his friend and colleague, **Mr.Joe Connors (Connors)** to prosecute the direct appeal. It seems reasonable to conclude that after petitioner retained **Connors**, based on **Valle's** advice, that **Connors** made a deliberate choice not to offend his colleague, by refusing to raise the obvious errors that **Valle** himself failed to preserve—failing to contest the FACTS at the time of sentencing. Raising those type of errors would have no doubt implicated **Valle's** sub-par performance. It therefore appears, that **Connors** no doubt labored under an actual CONFLICT OF INTEREST, that being, his friendship and loyalty to **Valle** may have attributed to his failure to raise these obvious errors that leaps out of the record[2]. It is noted, that although

---

[2] Interestingly, the government highlighted that very fact: "the sentencing issues were not preserved," and "the facts were not contested at the time of sentencing." See DOJ's Answer Br. at p. 17.

these errors were not preserved, **Connors** could have raised them under the PLAIN ERROR standard on direct appeal. See Federal Rules of Criminal Procedure, **Rule 52(b) Plain Error.** "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

The sole issue in the instant controversy is WHETHER (PETITIONER'S ) TRIAL COUNSEL REASONABLY DECIDED NOT TO PURSUE AN OBJECTION TO THE RECOMMENDATION THAT (PETITIONER'S ) OFFENSE LEVEL BE ADJUSTED FOR HIS ROLE IN THE OFFENSE.

## RESONABLENESS OF COUNSEL'S PERFORMANCE

Here, **Uribe-Deleon** alleges that he was denied the right to effective assistance of counsel at sentencing and on appeal. In order to prevail on his claim of ineffective assistance of counsel, **Uribe-Deleon** must demonstrate (1) that his lawyers performance "fell below an objective standard of reasonableness," and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 691-96. **Uribe-Deleon** has satisfied this standard. Although a strong presumption exists that the performance of counsel generally falls within a broad range of reasonable conduct, *id* at 691, reasonable performance generally includes some investigation of the facts and laws involved in a case. *See id.* at 691.

In the matter *sub judice*, the Court did not have a sufficient evidentiary basis for finding that petitioner had a leadership role. See *U.S. v. Mejia-Orosco*, 867 F.2d 216, 221 (5th.Cir. 1989) ("Specific findings will both **guide reviewing courts to the evidentiary basis for sentencing judgments**") (emphasis supplied). This Court did not say what factors it

5

based petitioner's managerial role upon, In fact there was no evidence before the court indicating anything other than the fact that **Uribe-DeLeon** did take part in the instant offense, facilitating the offense of possession with intent to distribute marijuana in violation of 21 USC §841(a). If petitioner's role must be typed, he was no more than that of a facilitator. The government in this case presented no evidence that **Uribe-DeLeon** was an organizer or leader of the marijuana distribution network CONTROLLED by **Santiago**. There was no evidence that **Uribe-DeLeon** had any control over **Santiago's** organization, nor was there any thing to suggest the existence of any of the factors identified by the Commission's commentary. Importantly, petitioner never made any statements in open court e.g., at the plea hearing to support the inference that he was a leader, nor were there e.g., any transcripts of covert tape recordings that were before the district court at the sentencing hearing. Had the district court made a factual finding that **Uribe-DeLeon** occupied a leadership role, the absence of proof on the subject would have forced the Fifth Circuit (in the event, **Connors** had raised the issue on direct appeal) to reverse the finding as clearly erroneous. See e.g., *U.S. v. Patrick,* 983 F.2d 206, 209-11 (11th.Cir. 1993).

In *U.S. v. Jobe,* 77 F.3d 1461,1476 (5th.Cir.1996), the Fifth Circuit held that: "§3B1.1(c) requires that a defendant be the organizer or leader **of at least one other participant** in the crime and that he assert control or influence over at least that one participant." (citations and footnote omitted). At first glance, the government seem to prove that because **Uribe-DeLeon** recruited the driver (the undercover government informant a.k.a. C.I.) , and may have given directions to the C.I., that the role adjustment was proper. However, as a matter of LAW it was insufficient to justify imposition of the upward adjustment under §3B1.1(c). It is well established that a defendant

CANNOT CONSPIRE with a government informer. "We acknowledge that a government agent **cannot be a co-conspirator** and that **there can be no conspiracy between one defendant and a government informer.**" *U.S. v. Manotas-Mejia*, 824 F.2d 360,365 (5th.Cir.1987) (*quoting U.S. v. Martino*, 648 F.2d 367,405 (5th.Cir.1981), *cert.denied,* 456 U.S 949 (1982)) (emphasis added). *See also,* **§3B1.1, comment. (n. 1):**

> "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." *Id.*

Thus for all practical purposes and as a matter of LAW, the CI cannot be deemed a **participant** for a §3B1.1(c) enhancement against petitioner. **Uribe-DeLeon** offense level should not have been enhanced under §3B1.1(c).

First, because of **Valle's** unprofessional conduct at sentencing, his failure to object [precluded] not only this Court from making a **Rule 32** finding but, also [precluded] the government from presenting specific and reliable evidence (petitioner contends that there is none) to support the existence of the aggravating fact of leadership role. See *U.S. v. Yates*, 990 F.2d 1179, 1182 (11th.Cir. 1993) (the government has the burden of proving by a preponderance of evidence the existence of the aggravating role; *accord U.S. v. De La Rosa*, 922 F.2d 675, 679 (11th.Cir. 1991).

Second, counsel needed only to read the definition of 'participant' for §3B1.1(c) purposes in the Sentencing Guidelines, or to review Fifth Circuit precedent on the issue to recognize at the time of sentencing in January 1999 that the government informer did not qualify as a 'participant' for §3B1.1 purposes. Fifth Circuit precedent in *Manotas-Mejia*, makes no distinction between a GOVERNMENT AGENT or a GOVERNMENT INFORMER for criminal liability purposes. this Court should find that counsel's failure to

conduct this brief examination of the law constituted performance below an objective standard of reasonableness.

"Court's have noted how important it is for lawyers to have command of the facts and legal issues  as they apply to a client's case. Beyond legal requirements, lawyers practicing criminal law in federal courts have a more basic need to be prepared. For example, in 1988, the American Bar Association ("ABA") published an article underscoring how counsel's role would 'change dramatically' under the new Guidelines 'because old ploys to avoid imprisonment are no longer available, defense counsel must scrutinize the guidelines for new avenues of relief.' Donald A. Purdy, Jr. & Michael Goldsmith, *Better Do Your Homework: Plea Bargaining Under the New Federal Sentencing Guidelines*, Spring 1988, A.B.A. Sec. Crim. Just., 2. The article emphasizes that counsel **must devote great attention to reasearching** ... *id.* at 3 the authors sum up their article by warning defense attorneys that they should attain a 'thorough knowledge of the changed system before traditional litigation skills may be effectively used.' *Id.* at 36." ***Rios-Delgado v. U.S.*** 117 F.Supp.2d 581, 588 (W.D.Tex. 2000) (emphasis added). "[A] reasonable attorney has an obligation to reasearch relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *U.S. v.* ***Williamson***, 183 F.3d 458, 462 (5th.Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [a] case" which would have revealed a solid and meritorious appellate issue) (citations omitted). "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id, **Strickland**,* 466 U.S. at 691.  "**Ignorance of relevant law constitutes an identifiable lapse in constitutionally adequate representation.**" *Id, Williamson* at 463 n.5

(emphasis supplied). When a criminal proceeding "loses its character as a confrontation between adversaries." *U.S. v. Cronic*, 466 U.S. 648, 656-57 (1984), the [harm] done is as certain as it is difficult to define. *See also Childress v. Johnson*, 103 F.3d 1221, 1227 (5th.Cir.1997) (ruling that counsel was ineffective at his client's plea hearing and acted like a 'potted plant' for merely ascertaining if client wished to plead guility, helping him execute a waiver of jury trial and stood in, on stand-by, just in case the sentencing court had questions); *and Powell v. State of Alabama,* 287 U.S. 45 (1932) (holding that: "It is not enough to assume that counsel thus precipitated into the case, thought there was no defense, and exercised their best judgement in proceeding to trial without preparation. Neither they nor the court could say what a prompt and thorough-going investigation might disclose as to the facts. No attempt was made to investigate ... Under the circumstances disclosed, we hold that defendants were not accorded the right of counsel in any substantial sense. **To decide otherwise, would simply be to ignore actualities** ...), *Id*, 287 U.S. at 58 (emphasis supplied).

\*         \*         \*         \*         \*         \*         \*

("The right to be heard would be, in many cases, of little avail if it did not comprehend **the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law.**"), id, 287 U.S. at 68 (emphasis supplied). This is a case of an uneducated Mexican Immigrant, who was definitely not in possession of [any] **skill in the science of law**— hesitant to rely upon his own [un]aided judgement in his dealings with this Court and the Prosecutor, invoked his right to legal representation in such matters. *See e.g., **Michigan v. Jackson,*** 475 US 625, 634, n. 7, (1986) ("The simple fact that [a] defendant has requested an attorney indicates that he does not believe that he is sufficiently

capable of dealing with his adversaries singlehandedly"); *McNeil v. Wisconsin*, 501 US 171, 177 (1991) ("The purpose of the Sixth Amendment counsel guarantee ... is to 'protec[t] the unaided layman at critical confrontations' with his '**expert adversary**'") (quoting *U.S. v. Gouveia*, 467 US 180, 189 (1984)). The Constitution does not take away with one hand what it gives with the other. The Sixth Amendment right to counsel plays a critical role in ensuring the fairness of criminal proceedings in our system of justice. See *Gideon v. Wainwright*, 372 US 335, 344 (1963) (Sixth Amendment means that a person charged with a crime need not "face his accusers without a lawyer to assist him"); ABA Ann. Model Rule of Professional Conduct 4.2, p 398, comment. (4th.ed. 1999) ("Rule 4.2 ... exists to prevent lawyers from **taking advantage of uncounseled laypersons** and *to preserve the integrity of the lawyer-client relationship*").

It is well established that the PSR is not evidence, for the simple due process reason that a defendant may not be sentenced on the basis of information which is materially [un]true. See *U.S. v. Brice*, 565 F.2d 336 (5th.Cir. 1977), had **Valle** objected to the erroneous findings made out in the PSR in regards to the aggravated role adjustment,the Court would have had to complied and make a **Rule 32** finding of fact to [RESOLVE] the factual dispute. Furthermore, had the district court failed to correct any factual inaccuracy in the PSR, after a proper objection was lodged, such error may be raised for first time on appeal and requires resentencing. See *U.S. v. Manotas-Mejia*, 824 F.2d 360 (5th.Cir. 1987), *cert.denied*, 484 US 957; see also e.g., *U.S. v. Williams*, 899 F.2d 1526, 1530-31 (6th.Cir. 1990) ("The dispute at issue here is the type contemplated by Rule 32(c)(3)(D). We find the district court erred when it relied on the information in the presentence report without resolving the disputed issue and sentencing Williams on

inaccurate information ... district court's failure to resolve the dispute concerning the presentence report as required under Rule 32(c)(3)(D) affected Williams' substantial rights. Such errors are not harmless, and cannot be overlooked.") (emphasis supplied). Fifth Circuit law stands for the proposition that "courts have the power to correct a Rule 32 violation on collateral attack if the §2255 Movant can demonstrate that the error could not have been brought to the court's attention earlier." *U.S. v. Bartholomew*, 974 F.2d 39, 43 (5th.Cir.1992). Petitioner have demonstrated good CAUSE excusing his failure to bring these issues to the Court's attention earlier, i.e., ineffective assistance of counsel at the hands of **Valle** and **Connors.**

It comes as no surprise that Magistrate **Black** and counsel **Turner** for the government have placed great emphasis and reliance on the factual conclusions drawn from the PSR, to support their **findings** and **position** that petitioner's claims are indeed frivolous and therefore should be dismissed, though the dispute at issue here is the type contemplated by **Rule 32(c)(3)(D).** Furthermore, both counsels needed [only] to READ the definition of "participant" in USSG §3B1.1 or to review case law on the issue to recognize that petitioner did not qualify as a leader/supervisor for the mere fact that the C.I. was not a **participant** for §3B1.1 purposes. This Court should easily find that counsel[s] failure to conduct this brief examination of the law constituted performance below an objective standard of reasonableness. In addition, finding also, thats there is a reasonable probability that the Court would not have sentenced **Uribe-DeLeon** as a leader/supervisor, thus, petitioner should be granted relief on the basis of his ineffective assistance of counsel claim.

/

Of equal importance, the instant case involves the issue o [CREDIBILITY], and the findings of the Magistrate Judge, William Black were not findings on said issue of credibility. The central issue here, in thi MOTION FOR RECONSIDERATION is whether petitioner's Due Proces rights were violated, where the District Judge, Honorable Judge Filemon B. Vela (Judge Vela) adopted the Magistrate's FINDINGS and recommendations in making his "de novo determination" of the disputed portions of the Magistrate's proposed findings and recommendations. Petitioner in his Objections to the Magistrate Report and Recommendation pointed out [controverted facts][3] that raises the specter of CREDIBILITY. This is not an impermissible call on this Court to conduct a hearing where either party objected to the Magistrate's credibility FINDINGS, rather this is a case where **no** CREDIBILITY FINDINGS were ever made. It therefore appears that the District Judge may have [un]constitutionally placed reliance on the Magistrate's Report and Recommendation, rendering his "de novo determination" "suspect." *See e.g., Hernandez v. Estelle,* 711 F.2d 619, 620 (5th.Cir. 1983) (holding that "where the magistrate's recommendation was based on conflicting testimony, it was especially significant that the district court, in complying with §636(b)(1), conduct a *de novo* review of the testimony itself. The district court nowhere states that such review was made and, as stated, it does not appear that such a review would have been possible. For these reasons, therefore, this case is remanded to the district court so that it may conduct a *de novo* determination of those portions of the magistrate's report to which OBJECTION has been made.").

---

[3] Petitioner respectfully apologizes to this Honorable Court for now having to challenge the misinformation in the PSR, this is so because both defense counsels failed to file or object to such misinformation, both before and after sentencing. Thus the reason for petitioner's claims of ineffective assistance of counsel and possible due process violations.

12

In the event of an appeal of this 52255 action, it is important to recognize that without even reaching the merits of the constitutional issues raised by petitioner regarding his Fifth and Sixth Amendments violations. The Fifth Circuit would no doubt be disturbed by the uncertainty reflected in the record as to whether the trial court actually considered petitioner's objections to the Magistrate's Report and whether the failure of Magistrate Black to hold an evidentiary hearing to resolve [disputed factual] matters, was clearly erroneous or contrary to law. *See U.S. v. Elsoffer,* 644 F.2d 357, 358-59 (5th.Cir. 1981), holding:

> "In *Mathews v. Weber,* 423 US 261, 270-71 (1976), one of the earliest Supreme Court cases interpreting §636(b) of the United States Magistrate's Act, 28 USC §§ 631-639, the Supreme Court discussed the ABUSES which could arise under a system of referral to judges not appointed pursuant to Article III of the Constitution ...The magistrate may do no more than propose a recommendation, and neither §636(b) nor the General Order gives such recommendation    presumptive weight ... The authority—and the responsibility—to make an informed, final determination, we emphasize, remains with the judge."

In the instant case, when one considers this Court's current record in light of *Mathews,* one is left with uncertainty as to whether the district court read and considered Petitioner's Objections to the Magistrate's Report. "The constitutional safeguards, as established by Congress and interpreted by the courts, are such that **an appellate court must be satisfied that a district judge has exercised his non-delegable authority by considering the actual testimony, and not merely by reviewing the magistrate's report and recommendations**." *Id, Elsoffer* at 359 (emphasis supplied).

*l*

"**Normally,** the judge ... will consider the record which has been developed before the magistrate and make his own determination on the basis of that record. ...In some specific instances, however, it may be necessary for the judge ... **to take additional evidence,** recall witnesses ..." *U.S. v. Raddatz,* 447 US 667, 675 (1980) (quoting **HR Rep No. 94-1609,** p. 3 (1976)) (emphasis supplied). It is thus evident that Congress anticipated that occasions would arise when a district judge could not make the requisite "de novo determination" without a hearing.[4] The core of petitioner's instant MOTION FOR RECONSIDERATION is that "[t]he one who decides must hear." *Morgan v. U.S.* 298 US 468, 481 (1936), it is well settled that a defendant's due process rights are not violated with the Magistrate "hearing" and the District Judge "deciding" all in conformity with the Magistrate's Act of 1976, codified under 28 USC §636(b)(1)(B), rather, he contends whether the District Judge can "hear" through the ears of his assistant, when the assistant failed to conduct a "hearing" on the contested CREDIBILITY assessments. Petitioner submits that such failure to hold a hearing, may be attributed to the fact that when the government filed their Answer Brief with this Court on **April 2, 2001,** petitioner was never served with a requisite copy, it was only when the undersigned assisting inmate called the Clerk's Office on or about **April 11, 2001,** to inquire whether the government had filed their response, one of the deputy clerks, **Mr.Guzman,** indicated that he would send petitioner a copy of the government's response. Petitioner did not receive said copy until **April 18, 2001. Fearing** that Magistrate Black

---

[4] Nothing in the passage from the opinion of the Court of Appeals in *Campbell v. U.S.District Court,* 501 F.2d 196, 206-207 (9th.Cir. 1974), that is quoted in the House Report can be read to mean anything different. In Campbell, the court said that a district court "may, in the exercise of its discretion, call and hear the testimony of a witness or witnesses" when "it finds there is a problem as to the CREDIBILITY of a witness or witnesses or for other good reasons." Nothing said in Campbell, however, implied that a district judge's failure to call a witness or witnesses is INVARIABLY PERMISSIBLE.

was not aware of the problem (that petitioner did not receive a copy of the government's Response until after 2 weeks had expired) the undersigned assisting inmate placed a call to the Clerk's Office the next day, **April 19,** and spoke with one of the clerks, **Ms.Olivia** relating to her *inter alia,* that petitioner needed some time to file his TRAVERSE to the government's response, and that if she would be so kind as to inform Magistrate Black of the problem, because factual disputes involving CREDIBILITY assessments were of the kind that could only be resolved by an evidentiary hearing or in the alternate an expansion of the record, by way of affidavits or declarations submitted by the parties, pursuant to Rule 7 foll. §2255. The assisting inmate pleaded with **Ms.Olivia** to please inform the Magistrate of the problem, she said that she would try. The undersigned assisting inmate called back the very next day **April 20,** to check with **Ms.Olivia** to see what she was able to do, she related that petitioner need not worry, that the magistrate would give him some time, so go ahead and prepare the traverse; before hanging up, she confirmed that she had left a note in the case-file notifying the magistrate that petitioner would be filing a traverse. To petitioner's amazement Magistrate Black filed his Report and Recommendation with this Court on **April 24, 2001.** As a consequence, the assisting inmate could not prepare and file petitioner's TRAVERSE in a timely manner, because of the mandatory ten (10) day requirement to file OBJECTIONS to the Report and Recommendation, *see* §636(b)(1)(C), the assisting inmate was forced to abandon the filing of the traverse. It was not surprising to see that Magistrate Black would base his decision to recommend the denial of relief on his **REVIEW of the PSR**. *See* Mag.Report at p. 3. For example, one of the factual disputes is that the Assistant US Attorney, James Turner, made some serious allegations that is totally [UN]TRUE. For example, claiming that

15

**Uribe-DeLeon** "acknowledged his role in the offense," attempting to reference the PSR at ¶ 34. *See* DOJ's Answer Brief at p1 14, (¶ 34 relates to an interview petitioner had at the county jail with the probation officer. However, petitioner makes it abundantly clear in his Objections to the Magistrate Report, that at no time during said interview, did he ever admit to any [aggravating] role in the offense, what he did admit to was that he was guilty of violating the drug statute, 21 U.S.C.§841). "When a DISPUTED factual question is a significant factor in the sentencing determination, the district court judge [must have] some acceptable **evidential basis** in order **to resolve** the matter against the defendant." *U.S. v. Johnson*, 823 F.2d 840,842 (5th.Cir.1987) (emphasis added).

At this juncture it is important to point out that the instant case, it is not just the word of the petitioner against the probation officer who interviewed him at the county jail, or even against his former attorney **Valle**, where the evidence shows that **Valle** acted like a "potted plant" at sentencing, failing to object to said enhancement, where there were several valid reasons for the Court to have considered the objection even if eventually the Court would have overruled such objections. *See Rion-Delgado v. U.S.* 117 F.Supp.2d 581, 589 (W.D.Tex. 2000) (ruling that defense counsel's "failure to object on the most basic level suggests that she was ineffective ... That is, counsel did not conduct a basic investigation into the Guidelines (and) the PSR."); *accord, Childress v. Johnson,* 103 F.3d 1221, 1227 (5th.Cir. 1997) (ruling that counsel was ineffective at his client's plea hearing and acted like a "potted plant" for merely ascertaining if client wished to plead guilty, stood in, on stand-by, just in case the sentencing court had questions).

16

The Magistrate properly exercised the authority granted him by 28 U.S.C.§636(b)(1)(B) "to submit ... proposed findings of fact and recommendations for the disposition" of the §2255 motion. But the Act also empowered the respondent to object to these findings. He did so, and the responsibility then devolved on the District judge to "make a de novo determination" of the contested fact. The Supreme Court has observed that "review de novo" means "that the court should make an independent determination of the issues" and should "not ... give any special weight to the [prior] determination of." *U.S. v. First City National Bank*, 386 US 361 (1967). Here, the District Judge was faced with a transcript that contained two irreconcilable accounts of the critical facts.

Fifth Circuit precedent stands for the Rule of Law that:

> "A district court CANNOT make a "de novo determination" of the CREDIBILITY of a witness without at least reading a transcript or listening to a tape recording of the testimony of the witness."

*Calderon v. Waco Lighthouse for the Blind*, 630 F. 2d 352, 356 (5th.Cir.1980); *accord Hill v. Jenkins, supra*, 603 F.2d 1256, 1258 (7th.Cir. 1979). It follows that because no CREDIBILITY assessments were made by the Magistrate for this Court's review, this Court could not make a 'de novo determination' of the credibility issue raised by petitioner. One of the most deeply engrained principles in Anglo-American jurisprudence requires that an official entrusted with finding facts **must hear the testimony** on which his findings will be based. The requirement that a finder of facts must hear the testimony offered by those whose liberty is at stake derives from deep-seated notions of fairness and human dignity. *See Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 US 123, 170 (1951)

17

(Frankfurter, J., concurring). Thus even though the district judge's order stated that he had made a 'de novo' review of the [entire] file. The 'entire file' did not include any findings on CREDIBILITY assessments, this is so, because **no evidentiary hearing was ever conducted to aid this Court in its 'de novo' review**. It therefore appears that "there was no 'de novo determination' of the contested portions of the magistrate's findings as required by 28 USC §636(b)(1)(C)." *Id, Calderon* at 355-56.

The Fifth Circuit have addressed a similar problem in *U.S. v. Patterson*, 962 F.2d 409, 415 (5th.Cir. 1992); and *U.S. v.Elwood*, 999 F.2d 814, 817 (5th.Cir. 1993), wherein, the district courts relied on the conclusory factual recitals of the PSR to support an aggravated role adjustment for the defendants' role as a manager or supervisor of the instant offense. The Fifth Circuit vacated both Elwood's and Patterson's sentences, finding that: **"Bald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR**. As in *Patterson*, we must vacate and remand **for a factual determination** whether Elwood in fact had **the requisite leadership role** in the offense to warrant an adjustment." *Id, Elwood*, 999 F.2d at 817-18 (emphasis added).

Furthermore, 28 U.S.C.§2255 states that:

Unless the motion and the files and the records of the case CONCLUSIVELY show that the prisoner is entitled to no relief, the court SHALL cause notice thereof to be served upon the United States attorney, **grant a prompt hearing** thereon, **determine the issues and make findings of fact** and conclusions of law with respect thereto (emphasis added).

Reading the initial Section 2255 motion, Petitioner's Objections to the Magistrate Judge's Report and Recommendation and the instant Motion to Reconsider together, a reasonable jurist would be hard pressed to state

CutePDF - www.tesco.com

CONCLUSIVELY that the facts alleged by petitioner, taken as true, would present no ground for relief for ineffective assistance of counsel. *See U.S. v. Yizar*, 956 F.2d 230,232 (11th Cir.1992); *accord*, **Humphrey v. U.S.** 888 F.2d 1546, 1550 (11th.Cir.1989) ("Rule 2255 provides that the court SHALL **conduct a hearing**—regardless of whether one is requested—if the court **cannot** determine conclusively the issue before it based on the 'files and records of the case.'") (emphasis added). Of course, "serious questions" would be raised if a district judge rejected a magistrate's proposed findings on [CREDIBILITY]. *See Raddatz*, 447 US at 681, n.7. Those serious questions can be avoided here, for the mere fact no findings on CREDIBILITY were made by Magistrate Black and therein lies a cruial void in the Court's current record. [CREDIBILITY EVIDENCE] is central to the determination of a material issue of fact. *See Brown v. Illinois*, 422 US 590,603 (1975).

The success or failure of the instant motion—depends upon whether the magistrate believes or disbelieves *inter alia*, petitioner's statement that at no time during the interview (referenced at PSR ¶ 34), did he admit to the **probation officer** that he played an aggravating role in the offense. This is perhaps the most significant factor in determining what fact-finding procedures must be employed, especially where as the rule of law shows that the C.I., a *bona fide* paid government informer was not criminally-liable, and thus could not be a 'participant' for leadership purposes under §3B1.1. *See* Petitioner's Objections at pgs. 8-11. Accordingly, this is not the case where petitioner admitted to certain conduct and then later tried to retract such admission.

The courts have generally recognized only two procedures as adequate to the task. Of course the most common method of determining

19

CREDIBILITY is to require the trier of fact to observe the demeanor of the witnesses. Alternatively, when the ultimate trier of fact has not seen and heard the witnesses, CREDIBILITY is accounted for by requiring the trier of fact to afford substantial deference to the factual determination of the magistrate or judge who did hear the witnesses. See e.g., the doctrine requiring appellate courts to defer to trial court finding of fact unless "clearly erroneous." Fed. R. Civ. P. 52(a); *U.S. v. U.S. Gypsum Co.*, 333 US 364, 394-95 (1948); *and U.S. v. Underwood*, 61 F.3d 306 (5th. Cir. 1995) (Ruling that Court of Appeals reviews district court's application of Sentencing guidelines de novo, while reviewing findings of fact under clearly erroneous standard.).

## COLD RECORD

Neither of these procedural devices for assessing CREDIBILITY was employed in this case. The magistrate did not order an expansion of the current record nor did he hold an evidentiary hearing to resolve the disputed issues of material fact. He instead elected to make his findings and recommendations on the BASIS of the PSR, the very document that is being called into question, that being, some of the information in the PSR amounts to [mis]information—rendering it unreliable. Due Process requires that a magistrate entrusted with finding the facts in a criminal case must hear the testimony whenever a fair resolution of disputed issues cannot be made on the BASIS of a review of the COLD RECORD. In this case it is undeniably clear that the issue of credibility cannot be resolved on the court's limited written record. This infirmity cannot be avoided by interpreting the Act to allow the district judge to give final effect to the magistrate's findings, when a material issue of fact is at stake and not just a **pure question of law**. The Act expressly requires the district judge to make a de novo determination of

20

contested issues of fact. **The record here does not reveal a pattern of facts that exposes the petitioner's objections as wholly INCREDIBLE.**

Thus the truth cannot be derived from this written record without an intolerably high margin of ERROR—a margin of ERROR that time-honored tradition teaches can be substantially reduced by simply requiring the magistrate to hear and observe the witnesses, wherein, **demeanor** and **veracity** were issues to be determined by the magistrate. [I]n criminal cases Chief Justice Hughes' much cited statement, "The one who decides must hear," *Morgan v. U.S.* 298 US 468 (1936), applies in full force. In the instant case, the district court's order denying the §2255 motion nowhere states that a reading of the objections informed its decision. Because the findings of the magistrate were NOT findings on the issue of CREDIBILITY, it appears "therefore the trial court [unconstitutionally] relied upon the magistrate's findings and recommendation." *U.S. v. Elsoffer,* 644 F.2d 357, 359 (5th.Cir. 1981). Because Magistrate Black failed to hold an evidentiary hearing, the Due Process Clause of the U.S.Constitution requires this Court to hold an evidentiary hearing on contested issues of fact in a criminal case where CREDIBILITY is crucial to the outcome. *See U.S. v. Marshall,* 609 F.2d 152, 155 (5th.Cir. 1980) ( *quoting U.S. v. Raddatz, supra* at 986 "[a] district court 'cannot constitutionally exercise its discretion to refuse to hold a hearing on **contested issues of fact** in a criminal case **where credibility is crucial to the outcome.**'" (Emphasis added).

This Court have dismissed the instant petition without an evidentiary hearing. The Supreme Court in *Blackledge v. Allison, supra,* 431 U.S. 63 (1977), upheld such practice, enabling "the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense for an

evidentiary hearing," *id*, *Blackledge*, 431 U.S. at 82 n. 25 *(quoting Raines v. U.S*. 423 F.2d 526, 530 (4th.Cir.1977)). Here the Raines court stated:

> "There will remain, however a category of petitions, usually involving CREDIBILITY, that will require an evidentiary hearing in open court ... unquestionably there will arise cases which cannot be fairly determined without the presence of the petitioner." *Id, Raines*, 423 F.2d at 530 (emphasis added) (citations omitted).

The Supreme Court in *Machibroda v. U.S*. 368 U.S. 487 (1962), EXPLICITLY REJECTED "improbable and unbelievable" as the test in passing on the need for an evidentiary hearing. That petitioner is unlikely to prevail on the merits is not a proper consideration in evaluating his right under §2255 "conclusively show" standard to a hearing on his claim of ineffective asistance of counsel, *id Raines supra*. Furthermore, affidavits do not resolve the issue of credibility — commonsense dictates that " where an unresolved factual dispute exists, **demeanor evidence** is a SIGNIFICANT   factor in adjudging credibility and questions of credibility, of course, are basic to resolution of conflicts in testimony." *Townsend v. Sain*, 372 U.S. 293, 321 (1963) (emphasis added) (citation omitted). Uribe-DeLeon declares in his affidavit that "**Valle** did not forward the Pre Sentence Report (PSR) to me until 5 days before sentencing. Because the PSR written in English, I was at a lost in trying to figure out most of the information. **Valle** discussed the PSR briefly with me, discussing only my prior convictions that were listed therein. He informed me that nothing could be done at that time to challenge my recommended sentence. I instinctively knew that something was wrong with the PSR, but I could not put my hands on it. Had **Valle** properly

22

informed me as to the contents of the PSR, **specifically the allegations and recommendation that were made by the probation officer as it pertained to the aggravated role enhancement, I would have objected and challenged the factual accuracy of such matter.** However, **Valle** made no attempt to explain the prejudicial effect of said enhancement, nor did he inform me that we could object to said enhancement." Affidavit at 4. In the event **Valle** submits a counter affidavit negating such claim, that would clearly anticipate the need for an evidentiary hearing in open court, attended by both parties, wherein direct testimony and cross examination , together with the help of their notes, correspondence and time records could shed light on the issue of credibility. "Testimony by witnessess to past events should be live and subject to testing by cross-examination. Affidavits cannot be probed, nor can they fill in missing details which may significantly alter or refute the account." *Id, Raines*, 423 F.2d at 533 (Sobeloff, J. Concurring in part).

"It is only when the witnessess are subject to cross-examination that their credibility and the weight to be given their testimony can be appraised." *Fortner Enterprises, Inc. v. U.S.* 394 US 495, 500 (1969); and *Poller v. Columbia Broadcasting System, Inc.* 368 US 464, 473 (1962). Accordingly, in no event can the government's answer be an acceptable substitute for a HEARING in an appropriate case as in the matter sub judice — where the critical element is CREDIBILITY.

In *U.S. v. Hayman*, 342 US 205 (1954), the Supreme Court laid down the standard for determining when a prisoner's presence is required:

23

CMsPDF - www.fasiss.com

"[W]hether the prisoner should be produced depends upon the issues raised by the particular case. Where, as here, there are substantial ISSUES OF FACT AS TO EVENTS IN WHICH THE PRISONER PARTICIPATED, the trial court should require his production for a hearing." *Id.*

Importantly, the Supreme Court in *Machibroda; Fontaine[5]; Sanders[6]; and Blackledge,* in remanding for hearings, adverted to the statutory possibility in some instances to dispense with the petitioner's presence, but did not disturb the *Hayman* standard. It is certainly not an understatement to say that *Hayman* is still a correct statement of law.

"The question whether an evidentiary hearing is necessary to resolve charges of ineffective assistance depends on an assessment of the record. *Byrne v. Butler,* 845 F.2d 501, 512 (5th.Cir.1988). If the district court cannot resolve the allegations without examining evidence beyond the record, **it must hold a hearing**." *U.S. v. Smith,* 915 F.2d 959, 964 (5th.Cir.1990) (citing *Clark v. Blackburn,* 619 F.2d 431, 432 (5th.Cir.1980)) (emphasis added). In this case, petitioner respectfully submits that his case involves allegations that [primarily] concerned occurrences off the record, thus, for one to place heavy reliance the PSR as did Magistrate Black and Mr.Turner does not aid this Court on the instant claim, moreso, where the circumstances alleged are NOT of a kind that the District Judge could resolve by drawing from his own personal knowledge or recollection. *Id, Machibroda,* 368 US at 495. [Palpable incredibility] cannot be measured in a vacuum, but rather must be determined in the light of commonsense recognition of real world practices. *See also Marshall,* 609

---

[5] *Fontaine v. U.S.* 411 US 213 (1973).
[6] *Sanders v. U.S.* 373 US 1 (1963).

F.2d at 156: "On remand, the district judge should consult ... other relevant evidence ... and should afford counsel for both sides the opportunity to point out, by memorandum or brief, whatever in the evidence each deems important to the judge's ruling. Once he has ascertained THE FACTS, the district judge should of course then apply the law of this circuit to them ..." (emphasis added).

# CREDIBILITY— TRIAL BY AFFIDAVIT & OR PAPER HEARING

It is the undersigned assisting inmate's position that this Court's final decision should be made not only upon a review of the current record, but with the benefit of an **Evidentiary Hearing** attended by **Uribe-DeLeon, Valle** and the **Probation Officer** who interviewed petitioner at the county jail and who may have compiled the PSR, making the conclusionary allegations that petitioner appears to admit to the aggravated role in the offense. Elementary considerations of fairness dictate that petitioner should be granted an evidentiary hearing, because the facts, most of which de hors the Court's record — hinges on the critical issue of CREDIBILITY, an issue not readily resolved by affidavits. Because petitioner attacks the reliability of the information in the PSR, the current record is insufficient to allow this Court to determine whether Valle's decision not to object was reasonable. In addition, petitioner is entitled to present any evidence that might establish that his sentence was based on inaccurate information. *See Nichols* at 1146. Under certain circumstances, sentence imposed on basis of incorrect pre-sentence information, prejudicial to defendant, cannot stand. *U.S. ex rel. Robinson v. Myers*, 222 F.Supp. 845 (D.C.Pa. 1963), affirmed 326 F.2d 972.

In proving that both before and after **Uribe-DeLeon's** sentencing that **Valle's** conduct was in fact a charade — it would surely be difficult given the likely sanctions to be visited on an attorney, who subsequently admitted participating. Yet the fact that the charade does occassionally occur is true beyond any reasonable doubt. Of course, the fact that charades have occurred in the past does not prove that a charade did in fact occur in this case.

# EVIDENTIARY HEARING

Should this Motion for Reconsideration be **GRANTED** and an EVIDENTIARY HEARING is ordered, for **Uribe-DeLeon** to receive any real measure of fairness and justice, Fifth Circuit precedent provides, that Rule 8(c), 28 U.S.C. foll.§2255 and 18 U.S.C.§3006(A) comes into play wherein "the Judge shall appoint counsel for an indigent defendant." *U.S. v. Vasquez*, 7F.3d 492, 496-97 (5th.Cir.1982). Petitioner is indigent and would need the assistance of counsel appointed by the Court, so that the playing field can can some semblance of being reasonable, in relation to the technical and formative battle readiness which the adversary has and the petitioner DO NOT[7].

# CONCLUSION

Interestingly, the instant case may not be too far from the precise facts of *Machibroda*, where the district judge relying only on the proffer made by the U.S.Attorney, concluded that a hearing was [un]necessary. The Supreme Court disagreed and remanded for a hearing. In so doing the Court specifically approved and quoted from *Walker v. Johnston*, 312 US 275 (1941), Walker's allegation was that his guilty plea had been coerced by the

---

[7] IT IS ESTABLISHED THAT THE BEST FUNDED AND MOST POWERFUL LITIGANT IN THE WORLD IS THE U.S.ATTORNEY.

U.S. Attorney, an Assistant and a Deputy marshal. The district court denied the writ of habeas corpus, resting the decision on ex parte affidavits from all parties. The Supreme Court held the affidavit procedure insufficient and required the taking of evidence — **not by the pleadings and the affidavits, but by the whole of the testimony, must it be determined whether petitioner has carried his burden of proof.** *Id, Walker*, 312 US at 287.

The Supreme Court in Machibroda, ended their opinion by stating that "there will always be marginal cases, and this one is not far from the line. The undersigned assisting inmate respectfully states that this case is way over it.

Respectfully Submitted,

**ERNESTO URIBE-DeLEON**

By:

**ROY DIXON/ BOP # 66303079**

**28 U.S.C.§2242.**

# CERTIFICATE OF SERVICE

I declare, under penalty of perjury, that the foregoing instrument is true and correct, pursuant to 28 U.S.C. §1746. EXECUTED on the date below.

     I also hereby CERTIFY that I have delivered said documents to the following parties, via first class mail, pre-paid and deposited in the Prison Mail Box pursuant to the Mail Box Rule*. That being the original and two (2) copies of said document to the DISTRICT COURT addressed to :

> ATTN: MAXINE/CLERK
> U.S. District Court, (S.D.TX.)
> 600 E.HARRISON #101
> BROWNSVILLE, TX. 78520.

and one (1) copy of the same to the U.S ATTORNEY'S OFFICE at:

> DOJ Counsel / S.D.TX.
> **Mr. James Turner, Esq.,**
> 910 Travis # 1500/ Box 61129
> HOUSTON, TX..77208-1129

On June 15, 2001.

Sincerely,

ERNESTO URIBE-DeLEON

By:

ROY DIXON,
ASSISTING INMATE
A/c.# 66303079

**PRAYER :** Wherefore, it is prayed that the God of creation rule in the hearts of men and that this Honorable Court grant the requested relief.

---

*The certificate complies with the provisions of the U.S.Supreme Court's decision in *Houston v. Lack*, 487 U.S.266 (1988) and as such the documents served herein are deemed filed this date by operation of law. *See also,Fed.R.App.P.25(a)*.

# AFFIDAVIT

| | |
|---|---|
| **COUNTY OF HOWARD** | § |
| | § |
| | §   **S.S.** |
| **STATE OF TEXAS** | § |
| | § |

BEFORE ME, the undersigned Authority, on this day personally appeared the undersigned Affiant, **ERNESTO URIBE-DeLEON**, who swore on oath and under penalty of perjury, that the following facts are true:

1. That my name is **ERNESTO URIBE-DeLEON**. I am of sound mind, capable of making this affidavit and fully competent to testify, to the matters stated herein, as I have personal knowledge of each of the matters stated herein.

2. That my primary language is the Spanish language. My reading, speaking, writing and comprehending of the English language is severely limited.

3. That both before and during sentencing, I depended on my retained attorney, **Mr. Joe Valle, Esq**. For legal advice and guidance as I did not know the law as it applied to my case, moreso, the legal complexities and intricacies involved in the litigation.

4. That an actual violation of Rule 32(a)(1)(A), Federal Rules of Criminal Procedure may have taken place, for the mere fact that Valle did not forward the Pre Sentence Report (PSR) to me until 5 days before sentencing. Because the PSR written in English, I was at a lost in trying to figure out most of the information. Valle discussed the PSR briefly with me, discussing only my prior convictions that were listed therein. He

1

informed me that nothing could be done at that time to challenge my recommended sentence. I instinctively knew that something was wrong with the PSR, but I could not put my hands on it. Had Valle properly informed me as to the contents of the PSR, specifically the allegations and recommendation that were made by the probation officer as it pertained to the aggravated role enhancement, I would have objected and challenged the factual accuracy of such matter. However, Valle made no attempt to explain the prejudicial effect of said enhancement, nor did he inform me that we could object to said enhancement. My right to Due Process concerns — right to fair sentencing procedures, particularly the right to be sentenced on the basis of accurate information, were effectively thrown out the door.

5. Be it known that I did not waive my right, i.e., the 10 day requirement for disclosure of the PSR to the defendant prior to sentencing, under 18 U.S.C. §3552(d) mandate. In sum, because I could not decipher and understand the English PSR within the 5 day period, I did not have adequate and reasonable time to understandably read the PSR and prepare for contesting any misinformation at sentencing.

6. In reference to the interview at ¶ 34 in the PSR, be it known that at no time during the interview, did I admit to any aggravated role in the offense, what I did admit to, was that I am guilty of violating 21 U.S.C. §841, that being, possession with intent to distribute a controlled substance, namely marijuana.

7. That because of what is referenced in part 6 above, the information in the PSR amounts to misinformation and hence unreliable.

8. That after my sentencing, Valle sought to console me, telling me not to worry about the appeal, that he knew a real good attorney one Mr.

2

**Joseph Connors, Esq**. who would do a very good job. After retaining Mr. Connors, I soon learnt that they (Valle & Connors) were very good friends. I cannot say for a surety whether Valle's motive for solicitation of employment for Mr. Connors was for pecuniary gain or that it was well intended, for the mere fact that after Connors was retained to prosecute my appeal, he failed to raise the sole issue that had any possibility of success on my direct appeal (Whether the enhancement for leadership role was proper). It is important to state that the prejudice arising from an actual conflict of interest lies in what the attorney refrains from doing **what he is compelled to do under the Sixth Amendment of the U.S. Constitution.**

### End of Affidavit,

Further Affiant sayth naught.

ERNESTO URIBE-DeLEON

SIGNED AND SWORN TO before me this _5_ day of _June_, 2001.

NOTARY PUBLIC
STATE OF TEXAS

My Commission expires on: _12-10-03_



**SEAL**

Debra DeHoyos
NOTARY PUBLIC
STATE OF TEXAS
My Commission Expires 12-10-2003

3